FAX CERT
DEC CERT

**ORIGINAL**

McCORRISTON MILLER MUKAI MacKINNON LLP

WILLIAM C. McCORRISTON        995-0
JONATHAN H. STEINER           6084-0
BECKY T. CHESTNUT             7756-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, HI 96813
Telephone No.: 529-7300
Facsimile No.: 524-8293
e-mail: Steiner@m4law.com

**LODGED**

JUL 2 8 2003

CLERK, U. S. DISTRICT COURT
DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 2 9 2003

at 11 o'clock and 45 min. a M
WALTER A.Y.H. CHINN, CLERK

Attorneys for Defendant
STATE FARM FIRE AND CASUALTY COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, BOARD OF DIRECTORS OF ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>STATE FARM INSURANCE; JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10 AND DOE GOVERNMENTAL ENTITIES 1-10,<br><br>          Defendants. | CIVIL NO. CV03 00312 HG BMK<br>(Class Action)<br><br>NOTICE OF HEARING MOTION; DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF JONATHAN H. STEINER; DECLARATION OF BARBARA SEIFFERTT; EXHIBITS "A" - "F"; CERTIFICATE OF WORD COUNT; CERTIFICATE OF SERVICE<br><br>DATE: October 20, 2003<br>TIME: 9:00 a.m.<br>JUDGE: Helen Gillmor |

5

## NOTICE OF HEARING OF MOTION

TO:      THOMAS R. GRANDE, ESQ.
            400 Davis Levin Livingston Grande Place
            851 Fort Street
            Honolulu, Hawaii  96813

            and

            JEFFREY P. CRABTREE, ESQ.
            ROBERT M. HATCH, ESQ.
            Pauahi Tower
            1001 Bishop Street, Suite 2300
            Honolulu, Hawaii 96813

            Attorneys for Plaintiffs

      NOTICE IS HEREBY GIVEN that the above-entitled DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR LACK OF SUBJECT MATTER JURISDICTION shall come on for hearing before the Honorable Helen Gillmor, Judge of the above-entitled court, in her Courtroom at the United States Courthouse, 300 Ala Moana Boulevard, Honolulu, Hawaii, at _9:00_ _a_m., on _OCT 2 0 2003_, or as soon thereafter as counsel can be heard.

      DATED: Honolulu, Hawaii, _____ JUL 2 8 2003 _____

                             WILLIAM C. McCORRISTON
                             JONATHAN H. STEINER
                             BECKY T. CHESTNUT

                             Attorneys for Defendant
                             STATE FARM FIRE AND CASUALTY COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, BOARD OF DIRECTORS OF ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM INSURANCE; JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10 AND DOE GOVERNMENTAL ENTITIES 1-10,<br><br>Defendants. | CIVIL NO. CV03 00312 HG BMK (Class Action)<br><br>DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR LACK OF SUBJECT MATTER JURISDICTION |

DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF
CAN BE GRANTED AND FOR LACK OF SUBJECT MATTER JURISDICTION

Comes now Defendant STATE FARM FIRE AND CASUALTY COMPANY ("State Farm"), by and through its attorneys, McCorriston Miller Mukai MacKinnon LLP, and moves this Court to dismiss this matter for failure to state a claim upon which relief can be granted or, alternatively, for lack of subject matter jurisdiction. The Complaint fails to state a claim upon which relief can be granted, as the statute upon which it is based does not apply to the policy at issue, as a matter of law. Moreover, the statute upon which the action is based does not create a private right

of action, and the matter is barred by the filed rate doctrine. In addition, this Court lacks subject matter jurisdiction, as Plaintiffs have failed to exhaust or pursue available administrative remedies, and therefore the matter should be dismissed pursuant to the exhaustion of administrative remedies doctrine, or under the principle of primary jurisdiction.

This Motion is made pursuant to Rules 7, 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Motion is based upon the attached memorandum in support of motion, declarations, exhibits, the records and files herein, and such further argument as may be presented at the hearing on this matter. A facsimile of the Declaration of Barbara Seiffertt is submitted herewith pursuant to LR 10.2(e), and the original will be filed as soon as it is received.

The Motion is also based upon, and State Farm hereby requests that this Court take judicial notice of, filings made by State Farm with the Hawaii Insurance Commissioner, copies of which are attached as Exhibits "C" – "F" hereto. Judicial notice is requested pursuant to Rule 201 of the Federal Rules of Evidence. See Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (a court may take judicial notice of "records and reports of administrative bodies"). State Farm also requests that this Court take judicial notice of the fact

2

that such filings are required by Hawaii State law, and that the

Hawaii State Insurance Commissioner is required to review said

filings, and may disapprove them or, if said filings are not

disapproved, they become effective within thirty days after

filing, unless said time period is extended by the Insurance

Commissioner.  See Haw. Rev. Stat. §§ 431:14-104 and 431:14-106.

DATED: Honolulu, Hawaii, _____ JUL 2 8 2003 _____

WILLIAM C. McCORRISTON
JONATHAN H. STEINER
BECKY T. CHESTNUT

Attorneys for Defendant
STATE FARM FIRE AND CASUALTY
COMPANY

3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, BOARD OF DIRECTORS OF ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | CIVIL NO. CV03 00312 HG BMK (Class Action) MEMORANDUM IN SUPPORT OF MOTION |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| STATE FARM INSURANCE; JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10 AND DOE GOVERNMENTAL ENTITIES 1-10, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................ 1

III. STANDARD OF REVIEW ...................................... 4

IV.  ARGUMENT ................................................ 6

    A.   H.R.S. § 431:10E-102 Does Not Apply to the
        Policy ........................................... 6

    B.   There Is No Private Right of Action Under H.R.S.
        § 431:10E-102 .................................... 14

    C.   The Insurance Commissioner Has Exclusive or
        Primary Jurisdiction Over the Subject Matter of
        Plaintiffs' Action, and Thus it Must Be Dismissed
        On Three Alternative Related Grounds: The Filed
        Rate Doctrine, Failure to Exhaust Administrative
        Remedies, and/or Primary Jurisdiction ............. 18

        1.   The Filed Rate Doctrine Bars Plaintiffs'
            Action ....................................... 22

        2.   Plaintiffs Have Failed to Exhaust
            Administrative Remedies ...................... 25

        3.   Dismissal of Plaintiffs' Complaint Is
            Required Under the Doctrine of Primary
            Jurisdiction ................................. 30

    D.   Plaintiffs Lack Standing to Bring a Claim Under
        H.R.S. Chapter 480 ............................... 38

    E.   Plaintiffs' Remaining Derivative Claims Fail ....... 40

V.   CONCLUSION .............................................. 40

56527_3.DOC

TABLE OF AUTHORITIES

PAGE

**Cases**

Ala. Farm Bureau Ins. Co. v. McCurry,
  336 So.2d 1109 (Ala. 1976)................................11

Allen v. State Farm Fire & Cas. Co.,
  59 F. Supp. 2d 1217 (S.D. Ala. 1999).......22-25, 29-30, 35, 36

Andrade v. Lauer,
  729 F.2d 1475 (D.C. Cir. 1984)............................27

Arkansas Louisiana Gas Co. v. Hall,
  453 U.S. 571 (1981).......................................23

Atkinson v. Halliburton Co.,
  905 P.2d 772 (Okla. 1995)..............................27, 28

Balistreri v. Pacifica Police Dept.,
  901 F.2d 696 (9th Cir. 1988)...............................4

Becker v. State Farm Mut. Auto. Ins. Co.,
  512 N.W.2d 191 (Wis. Ct. App. 1993).......................10

Bentley v. N.C. Ins. Guar. Ass'n.,
  418 S.E.2d 705 (N.C. Ct. App. 1992)........................8

Califo Trailer Mfg. Co. v. Ins. Co. of N. America,
  1994 WL 823554, at *6 (E.D. Ark. Oct. 12, 1994)............23

Chun v. Employees' Ret. Sys.,
  73 Haw. 9, 828 P.2d 260 (1992).....................6, 33, 34

Columbia Coll. v. Penn. Ins. Co.,
  157 S.E.2d 416 (S.C. 1967).................................7

Cort v. Ash,
  422 U.S. 66 (1975)........................................15

County of Los Angeles v. Farmers Ins. Exch.,
  182 Cal.Rptr. 879 (1982)..................................37

Epstein v. Wash. Energy Co.,
  83 F.3d 1136 (9th Cir. 1996)...............................4

Far East Conference v. United States,
  342 U.S. 570 (1952)........................................31

Farmers Insurance Exchange v. Superior Court,
  826 P.2d 730 (Cal. 1992)...............................36, 37

Glenbrook Homeowners Ass'n v. Scottsdale Ins. Co.,
  858 F.Supp. 986 (N.D. Cal. 1994)...........................3

Hawaii Blind Vendors Ass'n v. Dept. of Human Serv.,
  71 Haw. 367, 791 P.2d 1261 (1990)...............31, 32, 33, 34

Hess v. N. Pac. Ins. Co.,
  859 P.2d 586 (Wash. 1993).............................7, 12

Horwitz v. Banker Life & Casualty Co.,
  745 N.E.2d 591 (Ill. Ct. App. 2001)..................23, 24, 39

Hunt v. First Ins. Co. of Hawaii Ltd.,
  82 Haw. 363, 922 P.2d 976 (App. 1996).....................39

Imbler v. Pachtman,
  424 U.S. 409 (1976).........................................5

In re Empire Blue Cross & Blue Shield Customer Litig.,
  622 N.Y.S.2d 843 (1994)....................................23

In re Ins. Stacking Litig.,
  754 A.2d 702 (Pa. Super. Ct. 2000).........................38

Irvin v. Liberty Life Ins. Co.,
  2001 WL 246408 (E.D. La. March 12, 2001)...................38

Karlin v. Zalta,
  201 Cal.Rptr. 379 (1984)...................................37

Kona Old Hawaiian Trails Group ex rel. Serrano v. Lyman,
  69 Haw. 81, 734 P.2d 161 (1987).................26, 31, 32, 34

Love v. United States,
  871 F.2d 1488 (9th Cir. 1989)...............................5

Mack v. South Bay Beer Distribs. Inc.,
  798 F.2d 1279 (9th Cir. 1986) ...........................5, 21

McCarthy v. United States,
  850 F.2d 558 (9th Cir. 1988)................................5

McKart v. United States,
   395 U.S. 185 (1969)......................................27

N.C. Steel, Inc. v. Nat'l Council on Compensation Ins.,
   496 S.E.2d 369 (N.C. 1998)..............................23

Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers,
   414 U.S. 453 (1974).....................................17

Natalini v. Northwestern Fire & Marine Ins. Co.,
   259 N.W. 577 (Iowa 1935)................................10

New York Auto. Ins. Plan v. American Transit Ins. Co.,
   673 N.Y.S.2d 895 (N.Y. Sup. Ct. 1998)...................38

Reliable Collection Agency, Ltd. v. Cole,
   59 Haw. 503, 584 P.2d 107 (1978)....................15, 17

Salvation Army v. Blue Cross & Blue Shield of N. Ohio,
   636 N.E.2d 399 (Ohio Ct. App. 1993).....................30

Sierra Club v. San Joaquin Local Agency Formation Commission,
   981 P.2d 543 (Cal. 1999)................................29

St. Paul Fire & Marine Ins. Co. v. American Home Assurance Co.,
   514 N.W.2d 113 (Mich. 1994).............................10

Stevenson v. Superior Court,
   66 Cal.Rptr.2d 888 (Cal. 1997)..........................17

Taylor v. Standard Ins. Co.,
   28 F. Supp. 2d 588 (D. Haw. 1997)...................17, 39

United States v. Western Pac. R.R.,
   352 U.S. 59 (1956)......................................31

Venture Assocs. Corp. v. Zenith Data Sys. Corp.,
   987 F.2d 429 (7th Cir. 1993) ..........................3

Wileman Bros. & Elliott, Inc. v. Giannini,
   909 F.2d 332 (9th Cir. 1990)............................4

**Statutes**

22 V.I. Code Ann. § 1051 ..................................12

Alabama Code § 27-2-28 ....................................35

Alaska Stat. § 21.60.010 ..................................12

Haw. Rev. Stat. § 205A-6 .................................. 32

Haw. Rev. Stat. §§ 431:2-201 through 431:2-204 ................ 34

Haw. Rev. Stat. § 431:2-203 ....................... 14, 17, 34

Haw. Rev. Stat. § 431:10E-101 ............................... 16

Haw. Rev. Stat. § 431:10E-102 ........................ *passim*

Haw. Rev. Stat. § 431:10E-103 .................... 8, 9, 13, 16

Haw. Rev. Stat. § 431:14-101 ............................... 18

Haw. Rev. Stat. §431:14-101.5 .............................. 19

Haw. Rev. Stat. § 431:14-104(a) ........................ 19-21

Haw. Rev. Stat. § 431:14-106 ............. 21, 22, 28, 34, 36

Haw. Rev. Stat. § 431:14-117 ............................... 15

Haw. Rev. Stat. § 480-1 .................................... 39

Haw. Rev. Stat. § 480-2(d) ................................. 39

Haw. Rev. Stat. § 480-13 ................................... 39

Haw. Rev. Stat. § 91-14 .................................... 22

Haw. Rev. Stat. Chapter 480 ......................... 1, 2, 38

Haw. Rev. Stat. Chapter 88 ................................. 33

Haw. Rev. Stat. Chapter 91 ............................ 22, 34

N.C. Gen. Stat. § 58-43-5 .................................. 13

S.C. Code § 37-155 .......................................... 7

S.C. Code Ann. § 38-75-20 .................................. 13

S.C. Code Ann. § 38-75-30 .................................. 13

Wash. Rev. Code Ann. § 40.27.010 ........................... 11

Wash. Rev. Code Ann. § 48.27.020 ........................... 12

Wash. Rev. Code Ann. §48.27.010 ............................ 12

Wyo. Stat. Ann. § 26-23-101 ................................. 13

**Other Authorities**

10 Couch on Insurance 3d § 149:3 (2001) ...................... 11

2A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice
12.07 (2d ed.1991 & supp. 1991-92)........................... 5

5A  C. Wright & A. Miller, Federal Practice and Procedure
§ 1350 (1990)............................................... 5

6 J. & J. Appleman, Insurance § 3823 (1972) ................... 7

B. Schwartz, Administrative Law § 8.23 (2d ed. 1984) ......26, 31

Jordan, What Price Rebuilding?, 19 The Brief 17 (Spring 1990) ..7

Miller's Standard Insurance Policies Annotated,
Homeowners Forms....................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(1) ..................................... 5

Fed. R. Civ. P. 12(b)(6) .................................. 4, 5

MEMORANDUM IN SUPPORT OF MOTION

I.    INTRODUCTION

Defendant STATE FARM FIRE AND CASUALTY COMPANY ("State Farm") hereby seeks an order from this Court dismissing this action.  Dismissal is required as a matter of law based on a number of alternative grounds:

(1) The statute which State Farm is alleged to have violated does not apply to the policy at issue;

(2) There exists no private right of action under the statute;

(3) This action is barred by the filed rate doctrine;

(4) Plaintiffs have failed to exhaust administrative remedies;

(5)  Plaintiffs lack standing to bring an action under Hawaii Revised Statute ("H.R.S.") Chapter 480.

For each of these alternative grounds the Complaint should be dismissed in its entirety.

II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs brought this class action seeking judgment against State Farm based upon State Farm's alleged violation of H.R.S. § 431:10E-102.  On June 5, 2003, Plaintiffs filed a Complaint against State Farm on behalf of themselves and all others similarly situated (hereinafter the "Complaint").  Plaintiffs allege seven separate causes of action against State

Farm: (1) violation of H.R.S. § 431:10E-102 (First Count); (2) unfair and deceptive trade practices in violation of H.R.S. Chapter 480 (Second Count); (3) declaratory relief (Third Count); (4) unjust enrichment (Fourth Count); (5) restitution (Fifth Count); (6) disgorgement (erroneously labeled Fourth Count); and (7) punitive damages (erroneously labeled Fifth Count). Although styled in terms of seven separate claims (Counts), the gravemen of Plaintiffs' Complaint is that State Farm's application of the inflation coverage clause contained in Plaintiffs' insurance policy to the property insured thereunder resulted in over-insurance of the property, in violation of H.R.S. § 431:10E-102. A true and accurate copy of Plaintiffs' Complaint is attached hereto as Exhibit "A". Prior to filing the Complaint herein, Plaintiffs did not seek any administrative remedy available pursuant to H.R.S. Chapter 431.

Plaintiffs are the AOAO and Board of Directors of The Bougainville, a 141-unit townhouse association located in Aiea, on Oahu. According to the Complaint, Plaintiffs purchased property insurance from State Farm starting on July 12, 1984, and maintained that policy through 2001. See Complaint at ¶ 16. The Policy at issue, a certified copy of which is attached hereto as Exhibit "B", provides, in Coverage A, for damage to the buildings and other improvements located on the premises of

2

The Bougainville.[1]  The Policy, at Section I (Conditions), states: "The value of the covered property will be determined at . . . <u>replacement cost</u>, <u>without depreciation</u>, as of the time of loss to all covered property . . . ."  Policy at 16 (emphasis added).  Thus, the aim of the policy is to provide adequate coverage for the replacement value of the property insured.  The original replacement value of the property was set at $17,862,808.  <u>See</u> Complaint at ¶ 16.

In order to provide adequate coverage over time, the Policy contained an "Inflation Coverage" clause.  <u>See</u> Policy at 4. Under this "Inflation Coverage" clause, the limits of the insurance automatically increased annually based on an "Inflation Coverage Index," which was provided in the Declarations of the Policy.  <u>Id.</u>  However, the Policy provided the insured with the option to change the limit of insurance upon its request.  <u>Id.</u>  It is the application of the "Inflation Coverage" clause, and the resultant increases in the limits of coverage under the Policy, which Plaintiffs dispute in the Complaint.  <u>See</u> Complaint at ¶ 22.

---

[1]  The Court may consider a document outside the pleading in support of a 12(b)(6) motion, if the document is referenced in the complaint and is "central" to the Plaintiffs' claim.  <u>See</u> <u>Venture Assocs. Corp. v. Zenith Data Sys. Corp.</u>, 987 F.2d 429, 431 (7th Cir. 1993); <u>Glenbrook Homeowners Ass'n v. Scottsdale</u> <u>Ins. Co.</u>, 858 F.Supp. 986, 987 (N.D. Cal. 1994).

State Farm makes annual rate filings, as required by law with the Hawaii Insurance Commission. <u>See</u> Declaration of Barbara Seiffertt at ¶¶ 2 - 7. As discussed in detail, *infra*, these filings include and incorporate the inflation adjustment contained in the Inflation Coverage clause. The Plaintiffs herein <u>have never sought any administrative remedy</u> for the alleged violation of H.R.S. § 431:10E-102 by State Farm.

III. <u>STANDARD OF REVIEW</u>

In determining whether a motion under Rule 12(b)(6) can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. <u>Wileman Bros. & Elliott, Inc.</u> <u>v. Giannini</u>, 909 F.2d 332, 334 (9th Cir. 1990). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988). Although factual allegations are assumed to be true, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." <u>Epstein v. Wash. Energy</u> <u>Co.</u>, 83 F.3d 1136, 1140 (9th Cir. 1996). A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the Complaint. 2A J. Moore, W. Taggart & J. Wicker, <u>Moore's Federal Practice</u>

4

12.07 at 12-68 to 12-69 (2d ed.1991 & supp. 1991-92) (citing Imbler v. Pachtman, 424 U.S. 409 (1976)).  On a motion to dismiss a court may look beyond the complaint to matters of public record and in doing so does not convert a Rule 12(b)(6) motion to one for summary judgment.  Mack v. South Bay Beer Distribs. Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that "lack of jurisdiction over the subject matter" may be brought by motion.  The determination of such a motion "is based on the contents of the complaint, the allegations of which [courts] accept as true and construe in the light most favorable to the plaintiff.  Dismissal is improper unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Love v. United States, 871 F.2d 1488, 1491 (9th Cir. 1989) (citations omitted).  However, "when considering a motion to dismiss pursuant to Rule 12(b)(1) the [trial] court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988), cert. denied, 489 U.S. 1052 (1989); see also 5A  C. Wright & A. Miller, Federal Practice and Procedure § 1350, at 213 (1990).

A Rule 12(b)(1) motion is "appropriate when plaintiff has failed to exhaust administrative remedies that are a prerequisite to his suit." 5A C. Wright & A. Miller, _Federal Practice and Procedure_ § 1350, at 195 (1990). Both the failure to exhaust administrative remedies and the principle of primary jurisdiction address the subject matter jurisdiction of the Court. _See_ _Chun v. Employees' Ret. Sys._, 73 Haw. 9, 13-14, 828 P.2d 260, 262-63 (1992).

IV.  ARGUMENT

The claims for relief set forth in Plaintiffs' Complaint are dependent upon an alleged violation of H.R.S. § 431:10E-102, which prohibits the purchase or sale of overinsurance, subject to certain exceptions. These claims must be dismissed as a matter of law.

A.  H.R.S. § 431:10E-102 Does Not Apply to the Policy

Plaintiffs' claim of a violation of H.R.S. § 431:10E-102 is without merit, as that statute applies only to policies insuring the actual cash value of property, and does not apply to policies insuring the replacement value of property, such as the Policy at issue here. As the Complaint lacks a supporting legal theory, it should be dismissed for failure to state a claim.

The Policy purchased by Plaintiffs from State Farm was designed to indemnify Plaintiffs for the replacement value of their property if destroyed, rather than for the property's

6

actual cash value.  The distinction between the two types of
coverage, important to the analysis in this case, was set out in
a brief history by the Supreme Court of Washington:

> Historically, the underlying purpose of property
> insurance is indemnity.  Traditional coverage was for
> the actual or fair cash value of the property.  The
> owner was indemnified fully by payment of the fair
> cash value, in effect the market value, which is what
> the owner lost if the insured building was destroyed.
>
> However, it was recognized that an owner might not be
> made whole because of the increased cost to repair or
> to rebuild.  Thus, replacement cost coverage became
> available.  "Replacement cost coverages . . . go
> beyond the concept of indemnity and simply recognize
> that even expected deterioration of property is a risk
> which may be insured against."

Hess v. N. Pac. Ins. Co., 859 P.2d 586, 587 (Wash. 1993) (citing

6 J. & J. Appleman, Insurance § 3823 (1972) and quoting in part

Jordan, What Price Rebuilding?, 19 The Brief 17 (Spring 1990)).

Statutes of many states explicitly permit purchase and issuance

of insurance for replacement value.  As explained by the Supreme

Court of South Carolina:  "Replacement cost insurance was

devised to provide money for reconstruction.  In effect, the

insurer, under this plan, agrees to pay not only actual value

but also the difference between actual cash value and full

replacement cost."  Columbia Coll. v. Penn. Ins. Co., 157 S.E.2d

416, 423 (S.C. 1967) (construing former S.C. Code § 37-155,

replaced by S.C. Code Ann. §§ 38-75-20, 38-75-30); see also

Bentley v. N.C. Ins. Guar. Ass'n., 418 S.E.2d 705 (N.C. Ct. App.

7

1992) (distinguishing actual cash value from replacement value policies).

The distinction between policies for replacement value and policies only for the actual value of the insured property is critical in the instant case, as polices for the former are excluded from the scope of Hawaii's overinsurance statute. H.R.S. § 431:10E-102, upon which Plaintiffs rely, states in pertinent part:

> **Over-insurance prohibited; exceptions.** (a) Over-insurance shall be deemed to exist if property or an insurable interest in the property is insured by one or more insurance contracts against the same hazard in any amount in excess of the <u>actual cash value of the property</u> or of such interest . . .
>
> (b)  For the purposes of this section only, <u>the term actual cash value means the cost of replacement less such depreciation as is properly applicable to the subject insured</u>.
>
> (c)  No person shall knowingly sell, solicit, negotiate, or make any contract for insurance which would result in over-insurance of the property or interest therein proposed to be insured, <u>except as is provided in section 431:10E-103</u>. (Emphasis added)

H.R.S. § 431:10E-103, in turn, provides exceptions to the previous section:

> **Exceptions.**  Section 431:10E-102 does not apply to:
>
> (1)  <u>Insurance on buildings</u> and building service equipment pertaining thereto and part thereof, and machinery, tools, and other equipment appurtenant to or used in connection with any trade, business, manufacturing process, governmental operations, or

8

public and private institutions, and household
furniture and furnishings in dwelling houses, with
respect to the difference between the actual value of
the insured property at the time any loss or damage
occurs and the cost of repairing, rebuilding, or
replacing with new materials of like size, kind and
quality, such property as has been damaged or
destroyed by fire or other peril insured against.
(Emphasis added)

By its plain language, § 431:10E-102 prohibits contracting

for property insurance for an amount in excess of the actual

cash value of the property, defined as the replacement value

minus depreciation.  Read alone, as Plaintiffs urge this Court

to do, this section would generally preclude anyone from selling

or purchasing property insurance that would cover the

replacement value of a building.  Yet, standard homeowners'

policies insure for the replacement value of buildings without

depreciation.  See Miller's Standard Insurance Policies

Annotated, Homeowners Forms at 13.  Plaintiffs' interpretation

of this statute without reference to the exceptions would render

as violative of the statute many, if not most, homeowners'

policies currently in force in the state, and would preclude

homeowners from insuring their homes for the full replacement

value.  This is not the intent of the statute.

To avoid this result, § 431:10E-103(1) exempts from the

"overinsurance" provision "[i]nsurance on buildings . . . with

respect to the difference between the actual value of the

insured property at the time any loss or damage occurs and the

9

cost of . . . rebuilding" any destroyed property.  This exception thus permits building owners to purchase insurance intended to cover the full replacement cost of buildings, while precluding overinsurance for policies intended to insure only the actual cash value of buildings or other property.

Hawaii's overinsurance statute reflects the public policy concern, addressed for many years in the case law of other states, that a person might purchase one or more policies to insure property for more than its value, and then destroy the property to his financial advantage.  As stated by one court, "overinsurance" can describe "a situation where multiple coverages exist to a degree where the insured is tempted to trigger the insured event and thereby obtain the substantial coverage proceeds."  Becker v. State Farm Mut. Auto. Ins. Co., 512 N.W.2d 191, 193 (Wis. Ct. App. 1993); see also St. Paul Fire & Marine Ins. Co. v. American Home Assurance Co., 514 N.W.2d 113, 114 (Mich. 1994) (discussing "moral hazards" associated with overinsurance).  By early in the last century, a substantial body of case law had developed surrounding the ability of an insurer to avoid an insurance policy where the insured was found to have overinsured a property before allegedly destroying it.  See, e.g., Natalini v. Northwestern Fire & Marine Ins. Co., 259 N.W. 577 (Iowa 1935) (citing numerous cases).  In response to this concern, many states

10

sought to limit property insurance coverage to the actual loss sustained.  See 10 Couch on Insurance 3d § 149:3 (2001) ("The indemnity character limiting recovery to actual loss is generally said to be imposed as a matter of public policy to eliminate any motive of the insured to burn his or her property in order to profit thereby").[2]  Thus, although the legislative history of Hawaii's statute is devoid of any indication of the legislature's specific intent in passing its over-insurance statute, it is reasonable to assume that the statute's purpose is not to protect consumers, but to protect the public and insurers from fraud.

Hawaii's overinsurance statute addresses these public policy concerns, as do substantially similar overinsurance statutes of a number of other states.  For example, Washington's statute prohibits over-insurance, defined to exist when "property . . . is insured by one or more insurance contracts against the same hazard in an amount in excess of the fair value of the property."  Wash. Rev. Code Ann. § 40.27.010 (West 2003).  That section provides for exceptions set forth in the following section, entitled "replacement insurance."  The exceptions

---

[2] The Supreme Court of Alabama, analyzing overinsurance clauses in fire insurance policies, found still valid its observation made in 1917 that "[t]he purpose of overinsurance limitations in policies is to prevent fraud.  The public, as well as the assurer, is interested in preventing a situation in which a fire would be profitable to the assured."  Ala. Farm Bureau Ins. Co. v. McCurry, 336 So.2d 1109, 1111 (Ala. 1976).

11

permit insurance for a property's <u>replacement</u> value: "the insurer may in connection with a special provision or endorsement . . . insure the cost of repair or replacement of such property." <u>Id.</u> at § 48.27.020. The Supreme Court of Washington has acknowledged that these statutes permit replacement value policies: "A Washington statute prohibits 'overinsurance,' i.e., insurance in excess of the 'fair value' (defined as cost of replacement *less* depreciation), [Revised Code of Washington Annotated] §48.27.010. However, replacement insurance is authorized specifically by [Revised Code of Washington Annotated] 48.27.020 . . . ." <u>Hess v. N. Pac. Ins. Co.</u>, 859 P.2d 586, 587 (Wash. 1993) (en banc). With minor variations in wording, the statutes of Alaska and the Virgin Islands are identical to Washington's statute. <u>See</u> Alaska Stat. § 21.60.010 (2002); 22 V.I. Code Ann. § 1051 (2003).

North Carolina's overinsurance statute likewise prohibits insurance in excess of fair value, except for replacement value policies:

> No insurance company or agent shall knowingly issue any fire insurance policy upon property within this State for an amount which, together with any existing insurance thereon, exceeds the fair value of the property . . . [p]rovided, <u>any fire insurance company . . . may . . . provide insurance indemnifying the insured for the difference between the actual value of the insured property at the time any loss or damage occurs, and the amount actually expended to repair, rebuild or replace</u> . . . with new materials of like

12

size, kind, and quality property that has been damaged
or destroyed . . .

N.C. Gen. Stat. § 58-43-5 (2003)(emphasis added).  South

Carolina's statutes require property insurance policies to be

issued only for stated values, but permit issuance of

endorsements or riders for replacement value.  S.C. Code Ann. §§

38-75-20, 38-75-30 (2002).  An overinsurance statute in Wyoming

reads simply "No person shall buy insurance on property within

this state for an amount which, together with any existing

insurance, exceeds the fair value of the property or of the

interest of the insured therein.  This provision does not apply

as to insurance of replacement value."[3]  Wyo. Stat. Ann. § 26-23-

101 (West 2002).

     Despite the variations in the above policies, they

illustrate that, like the statutes of other states, Hawaii's

insurance statute is intended to preclude insurance for more

than the actual value of property, _unless_ the policy is written

to insure the replacement value of the property.  As the Policy

at issue is for replacement value, it is excepted from the scope

of H.R.S. § 431:10E-102 by H.R.S. § 431:10E-103, and

consequently is not prohibited by statute.

---

[3] It is notable that Wyoming's statute prohibits only _buying_
overinsurance, demonstrating that the purpose of the statute is
not consumer protection, but the prevention of fraud by
insureds.

Plaintiffs may argue that the injury being alleged in their Complaint is that the replacement value _itself_ was overstated in the Policy.  However, there is no statute governing the policy limits of a replacement policy, as shown above.  The reason for the absence of replacement policy limits is logical; because replacement value is determined at the time of the loss, and is thus subject to fluctuations in material and labor costs, there is no reliable method with which to determine replacement value for any specific property until after the loss has occurred.  Because of the difficulty in determining the precise value to replace an insured structure, there is no prohibition on over-insurance for replacement policies.  Rather, as discussed in section C, _infra_, this is regulated under the supervision of the Insurance Commissioner.

B.   <u>There Is No Private Right of Action Under H.R.S. §
     431:10E-102</u>

Even assuming, _arguendo_, that H.R.S. § 431:10E-102 did apply to the Policy at issue, violation of that statute does not create a private right of action, but rather, enforcement is within the exclusive jurisdiction of the insurance commissioner. H.R.S. § 431:10E-102(d) specifically provides that violation of that section "shall subject the violator to the penalties provide by this code."  The penalties referenced therein are found at H.R.S. § 431:2-203, which provides enforcement powers

14

to the Hawaii Insurance Commissioner for those who violate the code. See also H.R.S. § 431:14-117.

Hawaii has adopted the test set forth by the U.S. Supreme Court in determining whether a private right of action is created for the violation of a statute:

> "In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted' . . . -- that is, does the statute create a . . . right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . ."

Reliable Collection Agency, Ltd. v. Cole, 59 Haw. 503, 507, 584 P.2d 107, 109 (1978) (quoting Cort v. Ash, 422 U.S. 66, 78 (1975)) (emphasis in original omitted). The legislative history of H.R.S. § 431:10E-102 is silent regarding the creation of a private right of action. However, the other factors adopted in Reliable all weigh against the creation of such a private right of action.

First, Plaintiffs are not "one of the class for whose especial benefit the statute was enacted." When read in its entirety, the purpose behind the statute is a fraud avoidance mechanism: to prevent persons from purchasing property insurance for a value greater than the value of the property which is insured. For example, as a matter of public policy, society

15

does not sanction the purchase of $20,000 worth of insurance on

a boat, when the boat itself is only worth $10,000.  The

legislative scheme of H.R.S. Chapter 431:10E supports this

interpretation.  First, § 431:10E-101 prohibits a person without

an interest in the property insured from benefiting from

insurance on said property.  Second, § 431:10E-102 prohibits

over-insuring property.  Finally, in recognition of the fact

that replacing property often costs more than the market value

of said property, § 431:10E-103 provides exceptions for

insurance for the replacement value of certain property.  The

statute itself serves the purpose of preventing a windfall

situation for a person purchasing insurance.  It is not intended

to protect consumers from being charged premiums based on

inflated property values.[4]  Plaintiffs are not of the class whom

the statute was intended to especially benefit.[5]

  Second, the underlying legislative scheme does not imply

the creation of a private remedy.  Rather, the statute

specifically provides that the violator be subject to "penalties

---

[4] Presumably the consumer, who is in at least as good (if not
better) a position as the insurance company to know the value of
property being insured, should not need protection from over-
valuing the property being insured.

[5] That Plaintiffs are not within a special class of person whom
the statute is intended to protect is also evidenced by the fact
that the purchaser of "over-insurance" is also liable for
violation of the statute.  H.R.S. § 431:10E-102 provides
penalties not only for the person who sells such insurance, but
also for anyone who "negotiate[s]" or "make[s]" such a contract.

provided by this code." Those penalties are set forth at H.R.S.

§ 431:2-203(3), and are enforced by the Insurance Commissioner.

There is no indication that a private litigant can sue for

damages based on H.R.S. § 431:10E-102. "A frequently stated

principle of statutory construction is that when legislation

expressly provides a particular remedy or remedies, courts

should not expand the coverage of the statute to subsume other

remedies." Reliable, 59 Haw. at 509, 584 P.2d at 111, quoting

Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers,

414 U.S. 453, 458 (1974). H.R.S. Chapter 431:10E expressly

provides for penalties, and this Court should not expand the

coverage of the statute to create a private right of action.

See Taylor v. Standard Ins. Co., 28 F. Supp. 2d 588, 590 n.2 (D.

Haw. 1997) ("Rather, all actions taken under Chapter 431 must be

brought by the Insurance Commissioner."). This proposition is

particularly true with regards to a statutorily created right or

remedy: "[W]here a statute creates a right that did not exist

at common law and provides a comprehensive and detailed remedial

scheme for its enforcement, the statutory remedy is exclusive."

Stevenson v. Superior Court, 66 Cal.Rptr.2d 888, 899-900 (Cal.

1997). The alleged prohibition on over-insurance would not

exist, but for H.R.S. § 431:10E-102. The penalties provided for

a violation, found at § 431:10E-102(d), are the exclusive

17

remedy.  Because no private right of action exists, the matter
must be dismissed.

      C.     <u>The Insurance Commissioner Has Exclusive or Primary
Jurisdiction Over the Subject Matter of Plaintiffs'
Action, and Thus it Must Be Dismissed On Three
Alternative Related Grounds: The Filed Rate Doctrine,
Failure to Exhaust Administrative Remedies, and/or
Primary Jurisdiction</u>

Under Hawaii law, the insurance industry is highly
regulated by the Insurance Commissioner, and by statute (H.R.S.
Chapter 431).  This regulation includes oversight of virtually
every aspect of insurance, particularly with respect to the
forms of policies issued and the rates charged for insurance.
Because the automatic inflation adjustment contained in the
Inflation Coverage clause at issue was approved by the Hawaii
Insurance Commissioner, and because the Inflation Coverage
clause has a direct effect on insurance rates charged,
Plaintiffs' action must be dismissed based on one of three
alternative, but related, doctrines:  (1) the filed rate
doctrine; (2) failure to exhaust administrative remedies; and
(3) primary jurisdiction.

H.R.S. Chapter 431, Article 14 provides for comprehensive
regulation of insurance rates.  "The purpose of this article is
to promote the public welfare by regulating insurance rates to
the end that they not be excessive, inadequate, or unfair and
discriminatory . . . ."  H.R.S. § 431:14-101.  Included in the

18

scope of what is covered by Article 14 is a broad definition of both "Rate" and "Supplementary rating information." See H.R.S. §431:14-101.5.[6]  Insurers are required to make rate filings with the Insurance Commissioner:

> Every insurer shall file in triplicate with the
> commissioner, . . . every manual of classifications,
> rules, and rates, every rating plan, and every other
> rating rule, and every modification of any of the
> foregoing which it proposes to use.

H.R.S. § 431:14-104(a).  An insurer is also required to file "all supplementary rating and supporting information to be used in conjunction with a rate."  H.R.S. § 431:14-104(c).  This information is "open to public inspection upon filing with the commissioner."  H.R.S. § 431:14-104(e).  Once a rate filing is approved under this procedure, the insurer is required by law to

---

[6]  The definitions of "Rate" and "Supplemental rating information" are broad enough to include anything which affects the rate set for insurance, including the "Inflation Coverage Index" at issue in this case:

> "Rate" means that cost of insurance per exposure unit
> whether expressed as a single number or as a prospective
> loss cost with an adjustment to account for the treatment
> of expenses, profit, and individual insurer variation in
> loss experience, prior to any application of individual
> risk variations based on loss or expense considerations,
> and does not include minimum premium.

> "Supplementary rating information" includes any manual or
> plan of rates, classification, rating schedule, minimum
> premium, policy fee, rating rule, underwriting rule,
> statistical plan, and any other similar information needed
> to determine the applicable rate in effect or to be in
> effect.

See H.R.S. § 431:14-101.5.

follow the filed rate:  "No insurer shall make or issue a contract or policy except in accordance with filings which are in effect for the insurer as provided in this article . . ." H.R.S. § 431:14-104(n).

As noted, the heart of Plaintiffs' case lies in their complaint that State Farm improperly applied a rating plan to calculate their insurance premiums by taking into account an inflation factor.  Application of this inflation factor is mandated under the terms of the Policy, based on the Inflation Coverage clause.  Moreover, this adjustment is also incorporated in State Farm's annual required rate filing with the Hawaii Insurance Commissioner.  In each year's annual rate revision filing regarding State Farm's Condominium/Association Policy, State Farm has disclosed to the Insurance Commissioner the fact that the rates are affected by an inflation adjustment:

> "Actual written premium is further adjusted to reflect changes in policy amount due to inflation.  Policy amounts in this program are automatically changed to recognize increases in inflationary effects.  Policy amount increases are based on local construction costs as provided by American Appraisal (Boeckh) for building coverage and CPI for contents."

See Exhibits "C" at exhibit 2 attached thereto at (3) and Exhibit "E" at exhibit 2 attached thereto at (3).  This annual filing includes a chart showing the "Inflation Adjustment."

20

The annual increase in policy amount and the resulting premium increase are shown below for HAWAII.

|                             | 1998  | 1999  | 2000  | 2001  |
|-----------------------------|-------|-------|-------|-------|
| Increase in Policy Amount   | 1.033 | 1.033 | 1.033 | 1.033 |
| Premium Equivalence Factor  | 1.030 | 1.030 | 1.030 | 1.030 |

Exhibit "C" at exhibit 2 attached thereto at (5); See also Exhibit "E" at exhibit 2 attached thereto at (5). Thus, the rates and resultant premiums approved by the Insurance Commissioner incorporate the inflation coverage adjustment.[7]

Once the rate schedule is approved, State Farm is mandated to follow the rate schedule charged, including applying the Inflation Coverage Index to the policy as provided for under the Policy. See H.R.S. § 431:14-104(n), quoted, supra. If State Farm had not increased coverage for The Bougainville under the Policy as provided under the Inflation Coverage clause, then it would have been in violation of Hawaii law.

Article 14 also provides an opportunity to contest a rate filing. H.R.S. § 431:14-106(d) provides:

> Any person or organization aggrieved with respect to any filing which is in effect may make written demand to the commissioner for a hearing thereon . . . (emphasis added)

---

[7]  The Court is requested to take judicial notice of these public filings, and the fact that they have been approved by the Hawaii Insurance Commissioner pursuant to H.R.S. Chapter 431. See Mack, 798 F.2d at 1282; Declaration of Barbara Seiffertt; Exhibits "D" and "F".

If a hearing is held pursuant to H.R.S. § 431:14-106(d), then the provisions of H.R.S. Chapter 91, Hawaii's Administrative Procedure Act ("HAPA"), apply, including the right to judicial review of a final decision. H.R.S. § 91-14. These statutes combine to create an indisputable right for Plaintiffs to seek redress of their contested premium claims initially from the Insurance Commissioner and, if dissatisfied with the result, from this Court. Plaintiffs, however, have chosen to ignore this avenue of redress.

        1.    The Filed Rate Doctrine Bars Plaintiffs' Action

        Under the "filed rate doctrine", when a regulated company is required by a regulatory system to file with the regulating agency the rates to be charged, and to charge only the filed rate, there can be no civil action against the entity that includes as an element that a rate other than the filed rate should have been charged.

> The filed-rate doctrine prohibits collateral
> challenges to rates set by regulatory agency thereby
> preserving the authority of such agency over
> determinations of the reasonableness of rates and
> insuring that entities charge only those rates that
> the agency has approved.

Allen v. State Farm Fire & Cas. Co., 59 F. Supp. 2d 1217, 1227 (S.D. Ala. 1999). "The principle underlying the doctrine is that state agencies . . . are "deeply familiar with the workings of the regulated industry and utilize this special expertise in

22

evaluating the reasonableness of rates." Id. at 1228 (citations omitted).  As the U.S. Supreme Court explained:

> The considerations underlying the doctrine . . . are preservation of the agency's primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant.

Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 577-78 (1981) (citation omitted).

The filed-rate doctrine has been applied in the context of the setting of insurance rates by state insurance commissions. See Allen, supra; Califo Trailer Mfg. Co. v. Ins. Co. of N. America, 1994 WL 823554, at *6 (E.D. Ark. Oct. 12, 1994) (rejecting challenge to premiums charged based on rates which were allegedly the result of a conspiracy among the defendants); In re Empire Blue Cross & Blue Shield Customer Litig., 622 N.Y.S.2d 843 (1994), aff'd sub nom., Minihame v. Weissman, 640 N.Y.S.2d 102 (1996) (rejecting challenge to premiums based on rates which allegedly were based on filing false information with the insurance department); N.C. Steel, Inc. v. Nat'l Council on Compensation Ins., 496 S.E.2d 369 (N.C. 1998); Horwitz v. Banker Life & Casualty Co., 745 N.E.2d 591 (Ill. Ct. App. 2001).  In Horwitz, in finding that plaintiff's claim challenging the method the insurer calculated her premium was barred by the filed-rate doctrine, the court noted that under Colorado law, as under Hawaii law, "any person aggrieved by any

23

rate" had a right to file a complaint with the insurance
commissioner. Horwitz, 745 N.E.2d at 604.

It is anticipated that Plaintiffs will assert that the
application of the Inflation Coverage clause to increase the
limits of Plaintiff's coverage falls outside the scope of the
filed-rate doctrine, as it does not constitute "rate setting".
This argument fails, as the application of the inflation
coverage clause, mandated under the Policy, and incorporated in
rates approved by the Hawaii Insurance Commissioner, has a
direct effect upon the rate charged, and thus effectively
constitutes rate setting. A similar argument was rejected in
Allen, regarding a challenge to an approved change in the
policy's hurricane deductible. "The commissioner-approved
deductible which the plaintiffs challenge here is clearly the
equivalent of a rate." Allen, 59 F. Supp. 2d at 1229 n.5. As
the court in Allen noted, "[i]f this Court strikes the hurricane
deductible, thereby increasing coverage under the policies, that
necessarily affects a decrease in the defendants' effective
rates and disturbs the commissioner's rate-making authority."
Id. at 1229. Similarly, in this case, invalidation of or any
modification of the application of the inflation coverage clause
to Plaintiffs' policy will result in a change (decrease) in the
coverage, effectively decreasing the rate. It thus falls
squarely within the filed-rate doctrine. Allowing Plaintiffs'

claim to go forward, particularly as a class action, would effectively substitute the Court's judgment for that of the Insurance Commissioner. "The commissioner has the expertise in the area of setting insurance rates, including the hurricane deductible at issue here, and the commissioner's judgment should not be overridden by a court." Allen, 59 F. Supp. 2d at 1230. Plaintiff's action must be dismissed based on the filed rate doctrine.

As noted above, State Farm was required to increase coverage as provided under the Inflation Coverage clause, based on not only the Policy itself, but also filings with the Hawaii Insurance Commissioner. Allowing Plaintiffs to sue based on State Farm following these filings is precisely what the filed-rate doctrine seeks to prevent.

2.  Plaintiffs Have Failed to Exhaust Administrative Remedies

Plaintiffs have an administrative remedy available to them to dispute any rates set and/or premium charged by State Farm. This remedy must be pursued prior to resort to the courts, either under the doctrine of exhaustion of administrative remedies, or under the principle of primary jurisdiction.

Courts have "developed two principal doctrines to enable the question of timing [of requests for judicial intervention in the administrative process] to be answered: (1) primary

jurisdiction; and (2) exhaustion of administrative remedies.  B. Schwartz, Administrative Law § 8.23, at 485 (2d ed. 1984). "Both are essentially doctrines of comity between courts and agencies."  Id. (footnote omitted), see also Kona Old Hawaiian Trails Group ex rel. Serrano v. Lyman, 69 Haw. 81, 93, 734 P.2d 161, 168 (1987).

It is a well-recognized and immutable principal of agency administrative law that where, as here, plaintiffs allege financial injuries from government-regulated commercial conduct for which administrative remedies exist, those remedies must be exhausted before aggrieved parties may seek judicial redress. Known as the doctrine of "exhaustion of administrative remedies," the Hawaii Supreme Court has said of the doctrine that it comes into play "where a claim is cognizable in the first instance by an administrative agency alone."  Kona Old, 69 Haw. at 93, 734 P.2d at 169.  Citing United States Supreme Court precedent, the Hawaii Supreme Court explained that "judicial interference is withheld until the administrative process has run its course" with the exhaustion doctrine asking "simply that . . . the avenues of relief nearest and simplest should be pursued first."  Id. (citations omitted).

The doctrine of failure to exhaust administrative remedies has been applied in the insurance context.  The Oklahoma Supreme Court has held that a plaintiff must first exhaust his

administrative remedies against a private party before pursuing
a tort claim against the same party that arises from an alleged
violation of a state anti-discrimination statute. Atkinson v.
Halliburton Co., 905 P.2d 772 (Okla. 1995). Noting that the
doctrine of exhaustion of administrative remedies "is a well
settled rule that aids in the administration of justice and
prevents transfers to the courts of duties imposed by law on
administrative agencies," id. at 774, the Oklahoma Supreme Court
took note of two justifications for the doctrine - "the
expertise of the agency in the subject matter area and notions
of judicial efficiency," id., citing McKart v. United States,
395 U.S. 185 (1969). The Court then quoted from a decision of
the United States Court of Appeals for the District of Columbia
Circuit in Andrade v. Lauer, 729 F.2d 1475, 1484 (D.C. Cir.
1984), where the federal appellate court set forth the following
reasons for the exhaustion rule:

> 1) carries out legislative purpose in granting
> authority to an agency by discouraging frequent
> deliberate flouting of administrative procedure;
>
> 2) protects agency autonomy by allowing the agency in
> the first instance to apply its expertise and correct
> its errors;
>
> 3) aids judicial review by allowing parties to develop
> material facts in agency proceedings; and
>
> 4) promotes judicial economy by avoiding repetition of
> judicial and administrative factfinding and perhaps
> the necessity for judicial involvement.

Atkinson, 905 P.2d at 774-75.  Ultimately, the court held that

the exhaustion of administrative remedies doctrine operated to

preclude Plaintiff from pursuing his alternate avenue of tort

redress until the pertinent state agency had assessed his claims

of discrimination.

So too here, Hawaii's statutory scheme should be applied in

the same manner.  Clearly, by its very nature, Hawaii's

Legislature intended that H.R.S. §431:14-106(d) serve as a

logical first recourse for a party aggrieved over an insurer's

application of a rate making scheme.  The Insurance

Commissioner, utilizing his/her expertise in the field of

insurance rate making, is no doubt best qualified to undertake

the initial marshaling and assessment of complainants' evidence

- precisely the considerations supporting creation of the

doctrine of exhaustion of administrative remedies.

If the Commissioner determines that State Farm did not

violate H.R.S. § 431:10E-102, then Plaintiffs may seek judicial

review in this Court.  They may also pursue any alternative

avenues of tort and statutory redress, if such avenues exist.[8]

It is no argument against application of the exhaustion rule

that proceedings before the Insurance Commissioner might not

---

[8]    State Farm contends that no private or common law cause
of action exists for the alleged violations raised in the
Complaint.

28

address all issues or provide all of the relief Plaintiffs seek.
As stated by the Supreme Court of California in <u>Sierra Club v.</u>
<u>San Joaquin Local Agency Formation Commission</u>, 981 P.2d 543,
550-51 (Cal. 1999), "[e]ven where the administrative remedy may
not resolve all issues or provide the precise relief requested
by a plaintiff, the exhaustion doctrine is still viewed with
favor `because it facilitates the development of a complete
record that draws on the administrative expertise and promotes
judicial efficiency.'" (Citations omitted).

   <u>Allen v. State Farm Fire and Casualty Co.</u>, 59 F. Supp. 2d
1217 (S.D. Ala. 1999), is on point.  In that action, insureds
brought a purported class action for breach of contract,
conspiracy, inadequate notice, and restraint of trade, for
alleged violations by the insurer regarding premiums charged for
hurricane insurance.  The court in <u>Allen</u> dismissed the
complaint, based, <u>inter alia</u>,[9] on the failure to exhaust
administrative remedies.  Noting that the Alabama insurance code
"grants the commissioner extensive powers in regulating the
insurance industry," <u>id.</u> at 1225, and that the statutory scheme
provides for an aggrieved party to raise insurance rate disputes

---

   [9]  As discussed herein, the court in <u>Allen</u> found that the
matter must be dismissed under **either** the exhaustion of
administrative remedies doctrine, under the principle of primary
insurance, or based on the filed rate doctrine, as well on other
grounds.

at the agency level, id. at 1225-26, the court held that "plaintiffs must exhaust their administrative remedies before the insurance department" prior to seeking judicial redress. Id. at 1226; see also Salvation Army v. Blue Cross & Blue Shield of N. Ohio, 636 N.E.2d 399, 401-03 (Ohio Ct. App. 1993) (hospital was required to exhaust its administrative remedies before bringing bad faith breach of contract claim against insurer).

Under the well-established exhaustion doctrine, Plaintiffs must first submit their claim to Hawaii's Insurance Commissioner for adjudication before pursuing any other available avenues of redress.  Because they have not done so, their Complaint must be dismissed in its entirety.

 3.   Dismissal of Plaintiffs' Complaint Is Required
      Under the Doctrine of Primary Jurisdiction

Should the Court find that exhaustion of administrative remedies does not apply to the claims raised by Plaintiffs, this matter must still be dismissed under the doctrine of primary jurisdiction:

> Under the doctrine of primary jurisdiction, when a
> court and an agency have concurrent original
> jurisdiction to decide issues which have been placed
> within the special competence of an administrative
> agency, the judicial process is suspended pending
> referral of such issues to the administrative body for
> its views.

Hawaii Blind Vendors Ass'n v. Dept. of Human Serv., 71 Haw. 367, 371, 791 P.2d 1261, 1264 (1990); see also United States v. Western Pac. R.R., 352 U.S. 59, 63-64 (1956). When this happens, "the judicial process is suspended pending referral of such issues to the administrative body for its views." Id. at 64 (citation omitted). In effect, "[t]he courts are divested of whatever original jurisdiction they would otherwise possess." B. Schwartz, supra, § 8.24, at 488 (emphasis omitted). And "even a seemingly contrary statutory provision will yield to the overriding policy promoted by the doctrine." Id.

As stated by the Hawaii Supreme Court in Kona Old,

> [I]t is 'now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by [the legislature] for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

Kona Old, 69 Haw. at 94, 734 P.2d at 169 (quoting Far East Conference v. United States, 342 U.S. 570, 574-75 (1952)).

31

Hawaii Courts have not hesitated to apply the primary jurisdiction principle to dismiss actions involving areas of administrative authority pending a determination of the issue by the relevant agency.  In Kona Old, the plaintiffs brought suit based on an alleged violation of the Coastal Zone Management Act ("CZMA") by the Director of the Hawaii County Planning Department.  The CZMA specifically provided that any person could commence a civil action alleging that any agency has violated the CZMA.  Id. at 92, 734 P.2d at 168, citing H.R.S. § 205A-6.  The Court held that although the statute clearly provided for resort to the Courts, under the principle of primary jurisdiction, such resort would not be accorded until the proper administrative remedy was sought:

> Kona Old's claim, however, involves the issuance of a
> special management area minor permit, and its
> enforcement "requires the resolution of issues which,
> under [the] regulatory scheme, have been placed within
> the special competence" of the county planning
> department.  Thus, the request for judicial
> intervention in the administrative process should not
> have preceded the resolution by the Board of Appeals
> of the question of whether the planning director's
> action in issuing the minor permit was proper.

Kona Old, 69 Haw. at 94, 734 P.2d at 169 (citation omitted).  On this basis, the Court affirmed the lower court's dismissal of the action on jurisdictional grounds.  Id.

Similarly, in Hawaii Blind Vendors, a State statute provided for priority treatment of blind or visually handicapped

32

persons in the operation of vending facilities in public buildings.  The Department of Human Services ("DHS") was given administrative responsibility for adopting rules and implementing the program.  71 Haw. at 368-69, 791 P.2d at 1263. Pursuant to this authority, the DHS adopted rules governing the vending facility program which provided for announcement of vacancies to qualified blind persons, application procedures, and full hearings upon vendor complaints.  Id.  Subsequently, DHS was sued for alleged violations of the substantive and procedural law regarding the program.  Id.  The trial court granted summary judgment in favor of DHS.  Id.  The Hawaii Supreme Court reversed and remanded the case to the trial court with directions to remand to the DHS for an administrative hearing, based on the principle of primary jurisdiction.  Id. at 371, 791 P.2d at 1264.  The Court concluded that the DHS agency process was the appropriate forum for an initial determination of the issues.  Id.

    In Chun v. Employees' Retirement System, 73 Haw. 9, 828 P.2d 260 (1992), the Court relied upon the principle of primary jurisdiction to reverse a grant of summary judgment, with directions to the trial court to remand the matter to the Employee Retirement System for a full and fair administrative hearing.  The issue in Chun was the interpretation of the amount of service equal to a "year of service" under H.R.S. Chapter 88.

33

The Court held that the "very same considerations, uniformity and consistency in a specialized agency's administration" found applicable in Kona Old and Hawaii Blind Vendors, applied in Chun to "mandate suspension of the judicial process pending an initial review of the issues by the administrative body." Chun, 73 Haw. at 13, 828 P.2d at 262.

In the case at bar, there exist the same factors which justified application of the primary jurisdiction principle in Kona Old, Hawaii Blind Vendors, and Chun. This case raises a complex issue - the propriety and application of an adjustment to reflect inflation upon replacement insurance policies - which is "not within the conventional experience of judges" and which "requir[es] the exercise of administrative discretion." Kona Old, 69 Haw. at 94, 734 P.2d at 169. The legislature has set up a comprehensive scheme for the Insurance Commissioner to set, regulate, review, and enforce insurers' rate setting, including review of the policies themselves.[10] That scheme adopts all of the procedures of Hawaii's administrative procedures contained in H.R.S. Chapter 91. See H.R.S. § 431:14-106. Clearly, the legislature intended the Insurance

---

[10]The Insurance Commissioner is given broad powers and duties to enforce Chapter 431 in Article 2, particularly part II thereof. See, e.g., H.R.S. §§ 431:2-201 through 431:2-204. Particularly, the Insurance Commissioner is given the broad enforcement powers under H.R.S. § 431:2-203.

Commissioner to address questions regarding the methods and factors used in rate setting and application by insurers, with resort to the Courts only after such issues are determined at the agency level.

The primary jurisdiction doctrine was also applied in <u>Allen v. State Farm Fire & Casualty Co.</u>, 59 F. Supp. 2d 1217 (S.D. Ala. 1999). In <u>Allen</u>, insureds brought a purported class action against defendant homeowners' insurers alleging breach of contract, conspiracy, inadequate notice, and restraint of trade. The action was based on the allegation that the insurers had acted in concert to change the hurricane deductible from a fixed amount to a percentage of loss. The District Court in <u>Allen</u> dismissed the action, based, <u>inter alia</u>, on the doctrine of primary jurisdiction. Noting that the Alabama insurance code, Alabama Code § 27-2-28, set forth a procedure to request administrative relief, the court held that the action was premature and must be dismissed. <u>Allen</u>, 59 F. Supp. 2d at 1226-27. In so holding, the court noted that:

> **Plaintiff's claims depend upon an ultimate finding that the percentage deductible is unfairly discriminatory. This type of determination is within the commissioner's extensive authority.** In addition, this determination requires familiarity with the insurance industry and the variety of factors analyzed in deciding a deductible - matters within the commissioner's expertise. The commissioner should have the opportunity to review the appropriateness of the percentage deductible.

35

Id. at 1227 (emphasis added).  In this case, Plaintiffs' claims also depend upon an ultimate finding that State Farm's application of the Inflation Coverage clause is illegal.  As in Allen, this type of determination is within the Insurance Commissioner's authority, and the determination requires familiarity with the industry and factors involved in rate setting, property replacement values, inflation adjustments, and underwriting.  As in Allen, the legislature has set forth a procedure whereby Plaintiffs have an opportunity for administrative review of "any filing which is in effect . . . ."  See H.R.S. § 431:14-106(d)(emphasis added).  Under the doctrine of primary jurisdiction, the Insurance Commissioner should have the opportunity to address the appropriateness of State Farm's actions prior to resort to this Court.

The court's reasoning in Farmers Insurance Exchange v. Superior Court, 826 P.2d 730 (Cal. 1992), is instructive.  In Farmers, the Attorney General of California brought suit against the insurer under the Unfair Business Practices Act for violations of the California Insurance Code for failure to offer a "good driver discount policy" to all eligible applicants.  The Supreme Court of California held first resort to the administrative process is required under the primary jurisdiction principle, and that the lower court abused its discretion in concluding otherwise.  Id. at 732.  In so holding,

36

the Court noted that "questions involving insurance ratemaking
pose issues for which specialized agency fact-findings and
expertise is needed in order to both resolve complex factual
questions and provide a record for subsequent judicial review."
Id. at 743, citing Karlin v. Zalta, 201 Cal.Rptr. 379 (1984);
County of Los Angeles v. Farmers Ins. Exch., 182 Cal.Rptr. 879
(1982). The Court noted that while the case was brought under
California's Unfair Business Practices Act, the "gravemen of the
People's actions . . . is alleged violation of three specific
'Good Driver Discount policy' provisions of [the California
Insurance Code] and the 'unfairly discriminatory rates'
provision of [the California Insurance Code]." Id. at 744. The
court found that allowing the administrative agency, through the
insurance commissioner, to conduct its own analysis and
determination in the first instance, "would benefit immensely" a
court, and would enhance the uniformity of decisions. Id. at
745.

> In order to decide whether petitioners have violated
> section 1861.05, it must be determined whether they
> employed an "unfairly discriminatory" rate. The
> resolution of these questions mandates exercise of
> expertise presumably possessed by the Insurance
> Commissioner, and poses a risk of inconsistent
> application of the regulatory statutes if courts are
> forced to rule on such matters without benefit of the
> views of the agency charged with regulating the
> insurance industry.

Id. at 744.

Similarly, in this case the Insurance Commissioner should be given the opportunity to determine whether H.R.S. § 431:10E-102 applies or has been violated, and the appropriate remedy for any alleged violation.  This would avoid the potential for inconsistent application of H.R.S. Chapter 431, and would aid this Court in any determination of the issues raised herein, should such a determination ultimately prove necessary.  See also Irvin v. Liberty Life Ins. Co., 2001 WL 246408 (E.D. La. March 12, 2001) (action alleging discrimination as to the issuance of life insurance policies stayed pending completion of administrative process); In re Ins. Stacking Litig., 754 A.2d 702, 706-07 (Pa. Super. Ct. 2000) (class action regarding premiums charged for stacking properly referred to the Insurance Commissioner); New York Auto. Ins. Plan v. American Transit Ins. Co., 673 N.Y.S.2d 895 (N.Y. Sup. Ct. 1998) (action dismissed without prejudice and remanded to Superintendent of Insurance for determination).  This Court should apply the primary jurisdiction doctrine, and dismiss this case until Plaintiffs pursue available administrative remedies.

D.    Plaintiffs Lack Standing to Bring a Claim Under H.R.S.
      Chapter 480

The Second Count of the Complaint alleges a violation of Hawaii's Unfair and Deceptive Trade Practices Act, H.R.S. Chapter 480.  However, as Plaintiffs do not qualify as

38

"consumers," they lack standing to bring such an action.  H.R.S.
§ 480-2(d) states:

> No person other than a consumer, the attorney general
> or the director of the office of consumer protection
> may bring an action based upon unfair or deceptive
> acts or practices declared unlawful by this section.

For purposes of the statute, a "consumer" is defined as a
"natural person who, primarily for personal, family, or
household purposes, purchases, attempts to purchase or is
solicited to purchase goods or services or who commits money,
property or services in a personal investment."  H.R.S. § 480-1.
Neither the AOAO nor the Board of the The Bougainville qualify
as a "natural person."  See Hunt v. First Ins. Co. of Hawaii
Ltd., 82 Hawai`i 363, 373, 922 P.2d 976, 986 (App.
1996)(purchaser of workers compensation insurance, KTA Super
Stores, is not a "natural person" and thus cannot qualify as a
"consumer" under H.R.S. § 480-1, "and, therefore, has no private
cause of action pursuant to H.R.S. § 480-13").  The Second Count
must be dismissed as a matter of law.[11]

---

[11] Even if Plaintiffs had standing under H.R.S. Chapter 480, the
Second Count would still depend upon a violation of H.R.S. §
431:10E-102, which, as discussed supra, does not exist as a
matter of law.  Moreover, prior to alleging such a claim, they
would first have to exhaust administrative remedies.  See
Taylor, 28 F. Supp. 2d at 591-92 (administrative remedy for
violation of workers compensation statute had to be exhausted
prior to bringing bad faith claim).  See also Horwitz, 745
N.E.2d at 605.

E.    Plaintiffs' Remaining Derivative Claims Fail

The remainder of Plaintiffs claims, for declaratory relief, unjust enrichment, restitution, disgorgement, and punitive damages, are all derivative of, and based on, the alleged violation of H.R.S. § 431:10E-102.  See Complaint at ¶¶ 32 – 41. Because the First Count must be dismissed, these derivative claims must also be dismissed.

V.    CONCLUSION

For the foregoing reasons, the Complaint herein should be dismissed in its entirety.

DATED: Honolulu, Hawaii,  _____ JUL 2 8 2003 _____

WILLIAM C. McCORRISTON
JONATHAN A. STEINER
BECKY T. CHESTNUT

Attorneys for Defendant
STATE FARM FIRE AND CASUALTY
COMPANY

40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, BOARD OF DIRECTORS OF ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>   vs.<br><br>STATE FARM INSURANCE; JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10 AND DOE GOVERNMENTAL ENTITIES 1-10,<br><br>           Defendants. | CIVIL NO. CV03 00312 HG BMK (Class Action)<br><br>DECLARATION OF JONATHAN H. STEINER |

DECLARATION OF JONATHAN H. STEINER

I, JONATHAN H. STEINER, hereby declare that:

1. I am licensed to practice law in all courts of the State of Hawaii.

2. I am an attorney with the law firm of McCorriston Miller Mukai MacKinnon LLP, attorneys for Defendant.

3. I have personal knowledge of the matters set forth herein except and unless stated to be upon information and belief.

4. Attached hereto as Exhibit "A" is a true and correct copy of the Complaint; Demand for Jury Trial; And Summons to

Answer Civil Complaint, filed in the Circuit Court of the First Circuit of the State of Hawaii, but removed to this Court by State Farm on June 25, 2003.

5. Attached hereto as Exhibit "B" is a copy of the Condominium/Association Policy – Special Form 3, for AOAO The Bougainville, which has been certified by State Farm Fire and Casualty Company as a true and certified copy reflecting the coverages in effect on July 12, 1997 – July 12, 1998. I have also been provided with certified copies of policies reflecting the coverages in effect for the period from July 12, 1998 through July 12, 2002, and have examined those policies. Each of those policies contains the "Inflation Coverage" provision which is found at page 4 of Exhibit "B", and can be submitted to the Court if necessary.

I, JONATHAN H. STEINER, do declare under penalty of law that the foregoing is true and correct.

DATED: Honolulu, Hawaii, _____ JUL 2 8 2003 _____

_____
JONATHAN H. STEINER

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, BOARD OF DIRECTORS OF ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>STATE FARM INSURANCE; JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10 AND DOE GOVERNMENTAL ENTITIES 1-10,<br><br>　　　　　　　　Defendants. | CIVIL NO. CV03 00312 HG BMK (Class Action)<br><br>DECLARATION OF BARBARA SEIFFERTT |

## DECLARATION OF BARBARA SEIFFERTT

I, BARBARA SEIFFERTT, declare that:

1.    I am a Pricing Manager of the Property and Casualty Actuarial Department of State Farm Insurance Companies.  As a consequence of my position with State Farm Insurance Companies, I have personal knowledge of the matters stated herein.  I submit this declaration in support of State Farm Fire and Casualty Company's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted and For Lack of Subject Matter Jurisdiction.

2.    In my capacity as Pricing Manager, I am responsible
for supervision of the rate filings for State Farm Fire and
Casualty Company, including the rate filings made with the
Insurance Commissioner of the State of Hawaii.

3.    Attached hereto as Exhibit "C" is a true and correct
copy of a letter filing, dated September 16, 1998, from Angela
Sparks, Actuary for State Farm Insurance Companies, requesting
approval of rate revisions for certain Hawaii commercial package
programs, including the Condominium/Association package, for the
period effective November 15, 1998 for new business and February
15, 1999 for renewals.  Also included as part of Exhibit "C" are
the attached State Farm Fire and Casualty Company Hawaii
Commercial Multi-Peril (CMP) Filing Memorandum, and the exhibits
attached thereto.  Exhibit "C" in its entirety was filed with
the Hawaii Insurance Commissioner pursuant to the Hawaii Revised
Statutes.

4.    Attached hereto as Exhibit "D" is a true and correct
copy of a letter dated December 28, 1998, from Arnold. E.
Lizakowski, Assistant Director, State Filings for State Farm
Insurance Companies, referencing the filing which is Exhibit
"C", thanking the Insurance Commissioner for approval of that
filing, noting two changes to the manual for each program, and
noting that the effective date of the rate change will be
January 15, 1999 for new business, and March 15, 1999 for

renewals. The final printed manual pages which were attached to Exhibit "D" when it was submitted to the Insurance Commission are voluminous, and are not included in Exhibit "D". Exhibit "D" has been stamped by the Insurance Division of the State of Hawaii as "Filing Effective January 15, 1999". It is my understanding and experience that this indicates approval of the rate filing, which is Exhibit "C".

5.   Attached hereto as Exhibit "E" is a true and correct copy of a letter filing, dated February 10, 2000, from Angela Sparks, Actuary for State Farm Insurance Companies, requesting approval of rate revisions for the commercial package programs, including the Condominium/Association package, for the period effective June 1, 2000 for new business and August 1, 2000 for renewals. Also included as part of Exhibit "E" are the attached State Farm Fire and Casualty Company, Hawaii Commercial Multi-Peril (CMP) Filing Memorandum, and the exhibits attached thereto. Exhibit "E" in its entirety was filed with the Hawaii Insurance Commissioner pursuant to the Hawaii Revised Statutes.

6.   Attached hereto as Exhibit "F" is a true and correct copy of the first page of a letter dated August 25, 2000, from State Farm Insurance Companies, referencing the filing which is Exhibit "E". Exhibit "F" has been stamped by the Insurance Division of the State of Hawaii as "Filing Effective August 29,

2000". It is my understanding and experience that this indicates approval of the rate filing, which is Exhibit "E".

7. Each of the documents submitted with this Declaration as Exhibits "C" through "F" was made in the course of State Farm Insurance Companies regularly conducted business activities and was created at or near the time of the matters mentioned therein, and each of the copies as stamped by the Insurance Division of the State of Hawaii was received and maintained by State Farm Insurance Companies in the course of State Farm Insurance Companies' regularly conducted business activities.

I, BARBARA SEIFFERTT, do declare under penalty of law that the foregoing is true and correct.

DATED: Bloomington, Illinois, _7-28-03_

_Barbara Seiffertt_
BARBARA SEIFFERTT