McCORRISTON MILLER MUKAI MacKINNON LLP

WILLIAM C. McCORRISTON          995-0
JONATHAN H. STEINER            6084-0
BECKY T. CHESTNUT              7756-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, HI 96813
Telephone No.: 529-7300
Facsimile No.: 524-8293
e-mail:  Steiner@m4law.com

Attorneys for Defendant
STATE FARM FIRE AND CASUALTY COMPANY

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 09 2003

at ___ o'clock and ___ min. ___ M
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, BOARD OF DIRECTORS OF ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>   vs.<br><br>STATE FARM INSURANCE; JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10 AND DOE GOVERNMENTAL ENTITIES 1-10,<br><br>           Defendants. | CIVIL NO. CV03 00312 HG BMK (Class Action)<br><br>DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR LACK OF SUBJECT MATTER JURISDICTION; DECLARATION OF JONATHAN H. STEINER; EXHIBIT "G"; CERTIFICATE OF WORD COUNT; CERTIFICATE OF SERVICE<br><br>**HEARING**<br>DATE: October 20, 2003<br>TIME: 9:00 a.m.<br>JUDGE: Judge Helen Gillmor |

65439_1.DOC

17

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................. 1

II.  ARGUMENT ................................................ 1

    A.   H.R.S. § 431:10E-102 Is Inapplicable to the
        Policy ............................................ 1

        1.   H.R.S. § 431:10E-102 Prohibits Insuring
             Property than for More Actual Cash Value,
             Defined as Replacement Value Less
             Depreciation .................................. 2

        2.   Section 431:10E-103 Exempts from § 431:10E-
             102 Replacement Value Insurance for
             Buildings and Other Specified Property ......... 3

        3.   The Distinction Between "Actual Cash Value"
             and "Replacement Value" is Recognized in the
             Hawaii Revised Statutes and the Policy ......... 6

    B.   Plaintiffs Do Not Dispute that H.R.S. § 431:10E-
        102 Does Not Create a Private Right of Action. ...... 8

    C.   Plaintiffs Lack Standing Under H.R.S. Chapter 480 ... 9

    D.   Plaintiffs' Claims for Equitable Relief Must Also
        Be Dismissed ...................................... 11

    E.   The Claims Must be Dismissed for Failure to
        Pursue Administrative Remedies .................... 11

        1.   Plaintiffs Have an Administrative Remedy ...... 12

        2.   Primary Jurisdiction Applies ................. 14

    F.   The Filed Rate Doctrine Applies .................... 19

III. CONCLUSION .............................................. 21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Allen v. State Farm Fire & Cas. Co.,
  59 F. Supp. 2d 1217 (S.D. Ala. 1999).........................20

Chun v. Employees' Retirement System,
  73 Haw. 9, 828 P.2d 260 (1992)..............................19

Empire West v. Southern California Gas Co.,
  528 P.2d 31 (Cal. 1974).....................................20

Farmers Insurance Exchange v. Superior Court,
  826 P.2d 730 (Cal. 1992)................................16, 17

Hokama v. Univ. of Hawaii,
  92 Hawai`i 268, 990 P.2d 1150 (1999)........................14

Hunt v. First Insurance Co. of Hawaii Ltd.,
  82 Hawai`i 363, 922 P.2d 976 (App. 1996)....................10

In re Ins. Stacking Litig.,
  754 A.2d 702 (Pa. Super. Ct. 2000)..........................16

Kona Old Hawaiian Trails Group v. Lyman,
  69 Haw. 81, 734 P.2d 161 (1987).............................18

McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.,
  339 F.3d 1087 (9th Cir. 2003) .............................11

Peine v. Murphy,
  46 Haw. 233, 377 P.2d 708 (1962)............................11

Sierra Club v. San Joaquin Local Agency Formation Comm'n,
  981 P.2d 543 (Cal. 1999)....................................13

State ex rel. Attorney Gen. v. Fed. Emergency Mgmt. Agency,
  78 F. Supp. 2d 1111 (D. Haw. 1999)...........................4

Stokes v. Harrell,
  711 S.W.2d 755 (Ark. 1986)..................................21

Sutter Home Winery, Inc. v. Vintage Selections, Ltd.,
  971 F.2d 401 (9th Cir. 1992) .............................11

Szelenyi v. Morse, Payson & Noyes Ins.,
  594 A.2d 1092 (Me. 1991)....................................21

U.S. v. Handy,
  761 F.2d 1279 (9th Cir.  1985)...............................3

## TABLE OF AUTHORITIES

**Page(s)**

Wailua Associates v. Aetna Casualty & Surety Co.,
  27 F. Supp. 2d 1211 (D. Haw. 1998) ........................... 9

Wilson v. Fair Employment & Hous. Comm'n,
  54 Cal. Rptr. 2d 419 (Ct. App. 1996) ....................... 16

**Statutes**

H.R.S. Chapter 88 ............................................. 19

H.R.S. §§ 431:2-201 through 204 .............................. 12

H.R.S. § 431:10E-102 .................................... passim

H.R.S. § 431:10E-103 ................... 1, 2, 3, 4, 5, 7, 8, 9

H.R.S. § 431:13-103(11) ....................................... 9

H.R.S. § 431:14  ......................................... 12, 19

H.R.S. § 431:14-101 .......................................... 12

H.R.S. § 431:14-101.5 ........................................ 19

H.R.S. § 431:14-113 .......................................... 12

H.R.S. § 431:14-114 .......................................... 12

H.R.S. § 431:14-117 .......................................... 12

H.R.S. § 431:14-118 .......................................... 12

H.R.S. Chapter 480 ............................................ 9

H.R.S. § 480-2(d) ............................................. 9

H.R.S. § 514A-86 ............................................. 10

H.R.S. § 514A-93 .............................................. 9

DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN
BE GRANTED AND FOR LACK OF SUBJECT MATTER JURISDICTION

I.    INTRODUCTION

Plaintiffs' Memorandum in Opposition ("the Opposition")
fails to refute the fact that the Complaint fails to state a
claim, as a matter of law.  This Court is presented first with a
purely legal issue:  Whether H.R.S. § 431:10E-102 applies to the
Policy at issue.  If the Court finds that it does not, as
Defendant State Farm Fire and Casualty Company ("State Farm")
submits it must under the exception found in § 431:10E-103, then
the entire Complaint fails, and the Court need not reach any of
the other issues.

Even if the Court does not find, as a matter of law, that
the statute is inapplicable to the Policy, then the matter must
still be dismissed, as (1) Plaintiffs admit that this statute
does not create a private right of action; (2) none of the other
causes of action lie as a matter of law; and (3) Plaintiffs have
failed to exhaust or pursue available administrative remedies.

II.  ARGUMENT

    A.    H.R.S. § 431:10E-102 Is Inapplicable to the Policy

    In support of their claim that the Policy at issue
violates H.R.S. § 431:10E-102, Plaintiffs necessarily rely upon
selective and tortured readings of H.R.S. §§ 431:10E-102 and -
103.  Specifically, Plaintiffs' claim depends upon both a

complete disregard of the full and accurate definition of "actual cash value" in § 431:10E-102, and obscuration of the exemption to that section in § 431:10E-103.  Contrary to Plaintiffs' interpretation, the Policy is excluded from the scope of § 431:10E-102 by the exemption in § 431:10E-103. Consequently, as the claim lacks a supporting legal theory, it should be dismissed for failure to state a claim.

      1.   <u>H.R.S. § 431:10E-102 Prohibits Insuring Property for More than Actual Cash Value, Defined as Replacement Value Less Depreciation</u>

Plaintiffs urge the Court to find, erroneously, that H.R.S. § 431:10E-102 applies to the Policy at issue.  Section 431:10E-102, by its plain language, *prohibits* the sale or purchase of insurance for more than the depreciated replacement value, that is, the "actual cash value" of a property, which that statute defines as "the cost of replacement *less . . . depreciation.*" (Emphasis added).  Several states have similar statutes.  <u>See</u> Motion at 11-13.  While actual cash value policies are appropriate and common for many types of property (automobiles, for example), many states explicitly permit, as an exception to overinsurance statutes, insurance for up to the full, undepreciated replacement value of buildings.  <u>Id.</u>  Section 431:10E-103 creates such an exception in Hawaii.

2

Plaintiffs apparently seek to convince the Court that,
H.R.S. § 431:10E-103 aside, § 431:10E-102 *itself permits* the
purchase or sale of full replacement value insurance, presumably
for any type of property.  Plaintiffs do so by quoting, at page
8 of the Opposition, only *part* of the definition of "actual cash
value" provided in § 431:10E-102(b).[1]  In contrast to Plaintiffs'
selective quotation, the statutory definition of the phrase is
"cost of replacement **less . . . depreciation.**"  H.R.S. §
431:10E-102(b).  On its face, then, § 431:10E-102 prohibits the
sale or purchase of insurance for more than the depreciated
replacement value.  "Actual cash value" and "replacement value"
are therefore not equivalent; they have distinct meanings (based
on the inclusion or exclusion of depreciation) as provided by
the statute, and that distinction is critical to a correct
understanding of the statues and this case.

    2.   <u>Section 431:10E-103 Exempts from § 431:10E-102
          Replacement Value Insurance for Buildings and
          Other Specified Property</u>

Plaintiffs' argument that "[s]ection 103 has no application
to the present action because it is not concerned with valuation
and never applies until after a loss has occurred," Opposition
at 9, is nonsensical and would render that section purposeless.

---

[1] Statutes should be interpreted to avoid making any word
superfluous.  <u>U.S. v. Handy</u>, 761 F.2d 1279, 1280 (9th Cir.
1985).

3

Section 431:10E-103 provides that § 431:10E-102 "does not apply to . . . insurance on buildings . . . with respect to the difference between the actual value of the insured property at the time any loss or damage occurs and the cost of repairing, rebuilding, or replacing with new materials . . . such property . . . ."

First, § 431:10E-103 is fundamentally concerned with valuation because it exempts *from § 431:10E-102* insurance on the difference between the building's actual value and the cost of its repair, reconstruction or replacement. Second, § 431:10E-103 is part of a statutory scheme which defines overinsurance *based on valuation*; the assertion that it has no application to this case is illogical. See State *ex rel.* Attorney Gen. v. Fed. Emergency Mgmt. Agency, 78 F. Supp. 2d 1111, 1119 (D. Haw. 1999) (To determine plain meaning of statutory provision, court examines not only specific provision at issue, but also structure of statute as a whole, including its object and policy). Finally, Plaintiffs' own proposed explanation of § 431:10E-103 actually *supports* State Farm's interpretation. Plaintiffs argue:

> Section 103 simply creates a limited exception for actual repair costs if and when a loss occurs. This just means that **a policy will not be deemed to be overinsurance if, when a loss has occurred and a claim is actually made, the policy** either pays an actual

4

> value in excess of repair costs or **pays repair costs in excess of actual value**.

Opposition at 9.  However, § 431:10E-103 does not merely apply to *repairs*, but to "rebuilding or replacing . . . property." Thus, even under Plaintiffs' construction, § 431:10E-103 *necessarily* excludes from § 431:10E-102 a policy which would "pay[] repair [or rebuilding or replacement] costs in excess of actual value."  Despite Plaintiffs' attempts to obscure it, § 431:10E-103 exempts from § 431:10E-102 insurance, such as that provided by the Policy at issue, for up to the full, undepreciated replacement value of buildings and other specified property.[2]

Plaintiffs suggest that State Farm's interpretation of §§ 431:10E-102 and 431:10E-103 would lead to an absurd result. Opposition at 9.  To the contrary, State Farm's reading of the statutes is perfectly reasonable, consistent with their language and consistent with the statutes of numerous other states.[3]

---

[2] Plaintiffs' assertion that the section applies "only 'at the time any loss or damage occurs'" is unconvincing, as it ignores the fact that limits of liability are established *by the policy at the time the policy is written or renewed*.  If the section did not apply "until after a loss has occurred" it would serve no purpose, as § 431:10E-102 precludes the *purchase and sale* of policies that would result in overinsurance "as determined as of the effective date of the insurance."

[3] Significantly, Plaintiffs cite to the statutory schemes of no other states that are consistent with Plaintiffs' interpretation of these Hawaii statutes.

5

65439_1.DOC

Section 431:10E-102 addresses property insurance generally, not simply that for real property.  For example, the statute applies to an endless range of property types, including boats, automobiles, and personal valuables.  Clearly there is a public interest in prohibiting overinsurance of property of this type.  The exemption in § 431:10E-102(1) does not exempt insurance for the repair or replacement of property in general, only for specified types of property, including buildings and building service equipment, business or manufacturing equipment, and household furnishings.  The rational reason for this exemption is the public interest in permitting building owners (including homeowners) to insure the full replacement value of their buildings.  Such insurance allows owners to protect themselves from being able to collect only the depreciated value of their buildings—and thus being unable to rebuild—after a total loss.  Such protection is important, especially in Hawaii, which is at risk of massive losses from hurricanes and tsunamis.

      3.   The Distinction Between "Actual Cash Value" and "Replacement Value" is Recognized in the Hawaii Revised Statutes and the Policy

Plaintiffs argue, incorrectly, that there is no significant distinction between "actual cash value" and "replacement value," and appear to suggest that the distinction has been created by State Farm for the purpose of its Motion.  "Actual cash value"

and "replacement value" are clearly distinguished not only in the Hawaii Revised Statutes but in the Policy itself.

Sections 431:10E-102 and -103 establish an elegantly simple distinction between "actual cash value" and "replacement value." H.R.S. § 431:10E-102(b) defines "actual cash value" as "cost of replacement less . . . depreciation."  Without the deduction for depreciation, one is left with "cost of replacement." Plaintiffs' argument that these two simple key terms have no real distinction is belied by their clear definitions in the statute.[4]

Likewise, in the Policy at issue, the limits of the Policy are consistently established as the cost of replacement: "replacement cost, without . . . depreciation."  Policy at 16.

Plaintiffs attempt to obscure this distinction by quoting selectively from the Policy.  For example, it is true that the Policy permits payment of "actual cash value" for certain types of specified personal property, but not for buildings.  The Policy provides in Section I, Conditions, that State Farm may pay Plaintiffs the "value of lost property or damaged property

---

[4]   In both their Complaint and their Opposition, Plaintiffs compare the decline in their property's market value to the increase in its replacement value.  It is important to note that the market value of a property has no direct relationship to the cost of replacement of a property. Whereas the market price is merely the price a willing buyer would pay to a willing seller for the property, the replacement cost is determined by the cost of demolition, design, labor, and materials.

7

as determined in Condition 2," Policy at 15, but Condition 2
provides that the value of property "will be determined at: (a)
replacement cost, without deduction for depreciation." Id. at
16.   The sole exception is that the Policy permits State Farm to
pay "actual cash value" for "(1) used or second-hand merchandise
. . . (2) manuscripts; . . . (3) works of art . . . ." Id.   The
Policy does *not* permit State Farm to determine valuation of
buildings or any other property based on "actual cash value."
Moreover, even if the Policy *could* be considered a combination
of insurance for actual cash value and replacement value, it is
*precisely* the replacement value insurance that is the basis of
Plaintiffs' claim.

By virtue of H.R.S. § 431:10E-103, § 431:10E-102 does not
apply to the Policy at issue; consequently, Plaintiffs' claim
fails as a matter of law.

B.   Plaintiffs Do Not Dispute that H.R.S. § 431:10E-102
     Does Not Create a Private Right of Action.

In the Motion, State Farm demonstrated that no private
right of action exists under H.R.S. § 431:10E-102.   Plaintiffs
fail to dispute this contention.   Rather, Plaintiffs state that
they do not seek to enforce a private right of action under
H.R.S. § 431:10E-102.   They assert instead that violation of the
statute "is relevant to the cause of action Plaintiff has
alleged." Opposition at 13.   Apparently, Plaintiffs are making

8

the argument analogous to that adopted in <u>Wailua Associates v. Aetna Casualty & Surety Co.</u>, 27 F. Supp. 2d 1211 (D. Haw. 1998), which found that while no private right of action lies under H.R.S. § 431:13-103(11), violation of that act could constitute evidence relevant to other viable causes of action.

Based on the foregoing, Count I of the Complaint must be dismissed. Count I, entitled "Violation of HRS Section 431:10E-102," only alleges that State Farm violated the statute. If no private right of action exists for violation of the statute, the cause of action must be dismissed.

The viability of the Complaint, therefore, depends upon the other causes of action alleged. As discussed, *infra*, each of those claims fail as a matter of law, and therefore the Complaint as a whole must be dismissed in its entirety.

C.    <u>Plaintiffs Lack Standing Under H.R.S. Chapter 480</u>

State Farm asserted that Plaintiffs, who are the AOAO of The Bougainville, lack standing as "consumers" under H.R.S. § 480-2(d). In response, Plaintiffs argue that because the Board of Directors is acting on behalf of "two or more apartment owners" under H.R.S. § 514A-93, they qualify as "natural persons." This argument misses the point of State Farm's argument, and is contrary to the holding in <u>Hunt v. First Insurance Co. of Hawaii Ltd.</u>, 82 Hawai'i 363, 373, 922 P.2d 976,

9

986 (App. 1996).  To have standing, the "natural person" must have purchased goods or services, "for personal, family, or household purposes."  The individual apartment owners have not purchased any goods or services.  Rather, the AOAO, pursuant to H.R.S. § 514A-86, purchased the required insurance to cover the common elements of The Bougainville.

The very same argument asserted by Plaintiffs was rejected in Hunt.  In Hunt, the plaintiff asserting the claim was a natural person.  However, he had not purchased any goods or services.  He then attempted to argue that because he was a beneficiary under KTA Super Stores' policy, he had standing.  The court rejected this argument, because KTA Super Stores, the entity which purchased the insurance policy at issue, was not a "natural person."  The same is true in this case.  To the extent that the Board of the AOAO can represent and stand in the shoes of individual apartment owners to qualify as "natural persons," such individuals would still not qualify as "consumers" because such individuals did not purchase goods or services "for personal, family, or household purposes."[5]  Count II must be dismissed.

---

[5]  The fact that the individual apartment owners might qualify as "named insureds" under the Policy is irrelevant.  The AOAO, which is not a natural person, purchased the Policy, not the individuals.  Nor was the Policy purchased for "personal, family or household" purposes.

10

D.    Plaintiffs' Claims for Equitable Relief Must Also Be Dismissed

Plaintiffs' claims for unjust enrichment, restitution and disgorgement are claims for equitable remedies.  See, e.g., Peine v. Murphy, 46 Haw. 233, 242, 377 P.2d 708, 713 (1962). Because they sound in equity, these claims are precluded by the existence of an express, enforceable contract that governs the relationship between the Plaintiffs and State Farm.  See, e.g., Sutter Home Winery, Inc. v. Vintage Selections, Ltd., 971 F.2d 401 (9th Cir. 1992) (equitable claims for relief were barred where relationship was governed by valid express contract); McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc., 339 F.3d 1087, 1091 (9th Cir. 2003) (since unjust enrichment is equitable rather than legal claim, no action for unjust enrichment lies where contract governs parties' relationship to each other).  Because of the existence of the contract in this case, Plaintiffs equitable remedy claims are barred.[6]

E.    The Claims Must be Dismissed for Failure to Pursue Administrative Remedies

To avoid the necessary step of review by the Insurance Commissioner in the first instance, Plaintiffs attempt to portray this action as involving only one Policy.  It is

---

[6]    The remaining two counts, for declaratory relief and punitive damages, must also be dismissed as either purely derivative of other claims (declaratory relief), or failing to state a separate cause of action (punitive damages).

11

important to keep in mind, however, that Plaintiffs' lawsuit will potentially affect an entire market by their class action allegations. Those allegations potentially involve all rates and insurance contracts issued in Hawaii, and statutory interpretations of H.R.S. § 431:10E-102 which have far reaching potential effects. It is therefore vitally important that the expertise and fact finding of the Insurance Commissioner be required.

   1. <u>Plaintiffs Have an Administrative Remedy</u>

  Plaintiffs argue that they were not required to exhaust their administrative remedies, because no such remedies exist. The regulation of insurance has been "placed within the special competence" of the Insurance Commissioner. This is evidenced by the statutory scheme of Chapter 431. An entire article of Chapter 431, Article 14, is devoted to "regulating insurance rates." H.R.S. § 431:14-101. To that end, the Insurance Commissioner is given the powers of examination (§ 431:14-113), administration (§ 431:14-114), and the ability to hold hearings (§ 431:14-118) and assess penalties (§ 431:14-117). The Commissioner's general enforcement powers regarding the insurance code are further provided for at H.R.S. §§ 431:2-201 through 204, including broad enforcement powers under § 431:2-203. It is thus contemplated that the Insurance Commissioner

12

would have the initial opportunity to review alleged violations

of H.R.S. Chapter 431, including H.R.S. § 431:10E-102, to

determine if good cause for a complaint exists, and to attempt

to determine the appropriate remedy.  It is this remedy which

Plaintiffs have failed to pursue.[7]  Clearly, the Insurance

Commission has the power to examine and adjudicate the legality

and applicability of the inflation coverage clause to the Policy

at issue.

Plaintiffs also err when they argue that the exhaustion

doctrine is inapplicable when an agency is unable or lacks the

authority to adjudicate all of a plaintiff's claims.  Courts

routinely invoke the doctrine to secure the benefits of an

agency's expertise over claims within the agency's

jurisdictional purview, and save for subsequent judicial review

related claims – such as tort actions – whose judicial

resolution might be streamlined by preliminary agency action.

See, e.g., Sierra Club v. San Joaquin Local Agency Formation

Comm'n, 981 P.2d 543, 550-51 (Cal. 1999) ("[e]ven where the

administrative remedy may not resolve all issues or provide the

precise relief requested by a plaintiff, the exhaustion doctrine

is still viewed with favor 'because it facilitates the

---

[7]    The DCCA, Hawaii Insurance Division, routinely accepts
complaints about insurance practices, such that they have a form
complaint available on their website.

development of a complete record that draws on the

administrative expertise and promotes judicial efficiency'").

Moreover, even whether such remedies exist is a matter which

must first be pursued through the administrative forum.  See

Hokama v. Univ. of Hawaii, 92 Hawai`i 268, 274, 990 P.2d 1150,

1156 (1999) ("In this case, Dr. Hokama has not yet pursued his

damage claims in the administrative forum.  Until he actually

does so, any assessment of the actual availability of the relief

requested remains speculative and premature.")  Until Plaintiffs

pursue their available remedies before the Insurance

Commissioner, it is premature and speculative for them to claim

that the remedies they seek will not be available.

### 2.  Primary Jurisdiction Applies

Plaintiffs' claims are entirely dependent upon the

interpretation of § 431:10E-102.  Plaintiffs argue that the

primary jurisdiction doctrine should not be invoked, because

this matter allegedly does not involve "complex factual issues

within the jurisdiction and expertise of an administrative

agency."  Opposition at 27.  To avoid the application of the

primary jurisdiction doctrine, Plaintiffs attempt to

recharacterize and simplify the allegations contained in the

Complaint.  According to Plaintiff, the only alleged issue is

14

"whether Defendant's valuations were inflated." See Opposition at 29.

Contrary to Plaintiff's assertion, this case is not so simple. Rather, this case potentially raises complex issues regarding the uncertainty of determining replacement value, the risks faced by consumers without protection against inflation coverage, and the allocation of responsibility for determining the amount of coverage and replacement values. In involves nationally-used construction cost rating indexes. The administrative determination, after a full and fair administrative hearing, would prove invaluable to any court facing a claim such as that brought by Plaintiffs, if such a claim is viable under the law. The legislature, through the statutory scheme cited above, has placed the responsibility for this determination in the Commissioner. The Insurance Commissioner should be allowed to make findings as to whether the inflation coverage clause violates the spirit and letter of the statute.

Because of the Insurance Commissioner's intimate familiarity with the insurance industry, and his regulatory and oversight functions with relation to rate setting practices, it would be immensely beneficial to the Court to know the Insurance Commissioner's position before resort to the courts. See e.g.

15

*In re* Ins. Stacking Litig., 754 A.2d 702, 706-07 (Pa. Super. Ct.
2000) (interpretation of statute regarding stacking statute and
rates charged thereunder within expertise of insurance
commissioner); Wilson v. Fair Employment & Hous. Comm'n, 54 Cal.
Rptr. 2d 419, 424-25 (Ct. App. 1996) (finding that the insurance
commissioner "clearly possesses the expertise to evaluate and
resolve issues regarding actuarial risks and allegedly
discriminatory underwriting practices").

Particularly relevant to this issue is the Supreme Court of
California's decision in Farmers Insurance Exchange v. Superior
Court, 826 P.2d 730 (Cal. 1992).  Plaintiffs attempt to
distinguish that case by asserting that the issues raised
therein were more complex, and in comparison, the issues raised
by Plaintiffs do not require the Insurance Commissioner's
expertise.  Ironically, the same argument was raised by the
plaintiffs in Farmers Insurance Exchange, and rejected.  "The
People assert the claims at issue here involve relatively simple
factual determinations which do not require the detailed
examination of experts within the Department of Insurance."  Id.
at 743.  To make this argument, the plaintiffs in Farmers
Insurance Exchange attempted to recharacterize and simplify the
nature of their complaint (much as Plaintiffs have herein),
which attempt was rejected by the court.  "We cannot accept the

16

People's recharacterization of their complaint. . . . Taken at face value, the People's complaint alleges violations of specific statutory eligibility rules governing such policies, and violations of statutory rules for rates under those policies." Id. at 743-44.  The court then noted the many areas of inquiry necessary to determine whether the statute at issue was violated.  Id.

Similarly, this case will involve not only issues of whether State Farm properly or improperly applied the inflation indexes to calculate the limits of insurance, but will also involve policy issues behind H.R.S. § 431:10E-102.  A detailed examination of the policy forms, rating plans, risk factors, and the factors and formulas used therein will presumably be required.  As in Farmers Insurance Exchange, the "resolution of these questions mandates the exercise of expertise presumably possessed by the Insurance Commissioner, and poses a risk of inconsistent application of the regulatory statutes if courts are forced to rule on such matters without benefit of the views of the agency charged with regulating the insurance industry." Id. at 744.

Moreover, there exists a real possibility of inconsistent application of the relevant statutes if Plaintiffs are not first required to seek administrative review by the Insurance

17

Commissioner.  If the courts are involved in judicial determinations of conduct by one or more insurers at the same time that the Insurance Commissioner is examining these issues, determining whether violations have in fact occurred, and attempting to reach fair resolutions, there exists a real possibility of inconsistent determinations.  As noted in State Farm's Scheduling Conference Statement, a related case, <u>Miller v. Liberty Mutual Fire Ins. Co.</u>, Civil No. 03-1-1199-06, raising violation of the same statute under a homeowners' policy, is being litigated in the Hawaii Circuit Court.  <u>Moreover, the named Plaintiff in that case has also filed a Complaint with the Insurance Commissioner, which remains pending.</u>  <u>See</u> Declaration of Jonathan H. Steiner at ¶ 4 and Exhibit "G" thereto. Therefore, the possibility of inconsistent determinations is real.  It is precisely for this reason that the doctrine of primary jurisdiction applies.  <u>See</u> <u>Kona Old Hawaiian Trails Group v. Lyman</u>, 69 Haw. 81, 94, 734 P.2d 161, 169 (1987) ("Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by [application of primary jurisdiction]").

Nor do the Hawaii cases cited by State Farm present more complicated areas of administrative expertise.  For example, in

18

Chun v. Employees' Retirement System, 73 Haw. 9, 828 P.2d 260
(1992), the issue presented was the interpretation of "a year of
service" within H.R.S. Chapter 88, in calculating retirement
entitlements, an area over which the Employee Retirement System
had been delegated the power and responsibility of initial
review.   Similarly, agency interpretation of the meaning and
application of H.R.S. § 431:10E-102 is at issue in this case,
and the Insurance Commissioner has been delegated the power and
responsibility to oversee alleged violation of that section.
The issues presented in this case, concerning the application to
the statute of State Farm's Policy, are not less complicated or
subject to agency interpretation than those presented in Chun or
any of the other cases cited in the Motion.

    F.    The Filed Rate Doctrine Applies

    Plaintiffs assert that the filed rate doctrine does not
apply, as this case involves the amount of coverage, rather than
the rate charged.   This oversimplifies the issue.   H.R.S. §
431:14-101.5 provides a broad definition of the information
which an insurer must submit to the Insurance Commission as part
of its supplemental rating information, including "any other
similar information needed to determine the applicable rate in
effect or to be in effect."   State Farm was required to, and
did, file information regarding the effect of the inflations

19

coverage adjustment.  Any change in the application of that

adjustment to the Policy necessarily affects the rate charged

for insurance, just as a change in the deductible would

necessarily change the rate charged.  See Allen v. State Farm

Fire & Cas. Co., 59 F. Supp. 2d 1217, 1227 (S.D. Ala. 1999).[8]

     Plaintiffs argue that State Farm was not "mandated" to

increase Plaintiffs' policy limits.  However, Plaintiffs

acknowledge that State Farm was, under the terms of the

insurance Policy, required to change the policy amounts "based

on local construction costs as provided by American Appraisal

(Boeckh) for building coverage and CPI for contents."  This is

precisely what State Farm in fact did, and which State Farm was

required to do under the terms of the Policy.  If State Farm did

not increase the Policy amount as provided by the Boeckh index,

then it would have been in violation of the terms of the Policy.

As State Farm has demonstrated, the application of this index

and its effect on the Condominium/Association Policy, was

reported to the Hawaii Insurance Commission as part of its

annual rate filings.  See Exhibits "C" and "E" to the Motion.

---

[8]  Plaintiffs' attempt to analogize this case to Empire West v.
Southern California Gas Co., 528 P.2d 31 (Cal. 1974), widely
misses the mark, as the question at issue in that case, the
amount of gas the proposed building would consume, was never
submitted to any regulatory agency, in contrast to the
inflationary coverage information, which State Farm did submit
to the Hawaii Insurance Commission for review.

As Plaintiffs point out, the Policy provides that the insured, The Bougainville, had the option to change the limit of insurance.  In this case the insured never requested a change in the Policy.  Contrary to Plaintiffs argument, it was not incumbent upon State Farm to value the property differently than as provided under the terms of the Policy.  See Stokes v. Harrell, 711 S.W.2d 755, 756 (Ark. 1986) (An insurance agent ordinarily has no duty to advise insured on maintaining proper coverages absent some special circumstances indicative of a special and ongoing relationship); Szelenyi v. Morse, Payson & Noyes Ins., 594 A.2d 1092, 1094 (Me. 1991) (insurance agent does not have duty to advise on the adequacy of coverage absent some special relationship with the insured evidenced by their course of dealings or the terms of their agency agreement).

III. CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the Motion, the Complaint should be dismissed in its entirety.

DATED: Honolulu, Hawaii,  _____OCT - 9 2003_____

WILLIAM C. McCORRISTON
JONATHAN H. STEINER
BECKY T. CHESTNUT
Attorneys for Defendant
STATE FARM FIRE AND CASUALTY
COMPANY

21

65439_1.DOC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, BOARD OF DIRECTORS OF ASSOCIATION OF APARTMENT OWNERS OF THE BOUGAINVILLE, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>  vs.<br><br>STATE FARM INSURANCE; JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10 AND DOE GOVERNMENTAL ENTITIES 1-10,<br><br>          Defendants. | CIVIL NO. CV03 00312 HG BMK<br>(Class Action)<br><br>DECLARATION OF JONATHAN H. STEINER |

DECLARATION OF JONATHAN H. STEINER

I, JONATHAN H. STEINER, hereby declare that:

1. I am licensed to practice law in all courts of the State of Hawaii.

2. I am an attorney with the law firm of McCorriston Miller Mukai MacKinnon LLP, attorneys for Defendant.

3. I have personal knowledge of the matters set forth herein except and unless stated to be upon information and belief.

4. Attached hereto as Exhibit "G" is a true and correct copy of the Complaint filed in Lee Miller v. Liberty Mutual

Fire Insurance Company, et al., Civil No. 03-1-1199-06, filed
on June 9, 2003 in the Circuit Court of the First Circuit,
which Complaint alleges that the Defendant therein violated
H.R.S. § 431:10E-102, based on the application of an "Inflation
Endorsement".  In that Complaint, at paragraph 21, the
plaintiff therein alleges that she has filed a formal complaint
with the Hawaii Insurance Bureau.  It is my understanding, on
information and belief, that the Insurance Commissioner's
investigation of the Complaint remains pending.  Defendant
herein requests that this Court take judicial notice of the
filing of the Complaint in Civil No. 03-1-1199-06, and the
filing of a Complaint with the Insurance Commissioner.

I, JONATHAN H. STEINER, do declare under penalty of
law that the foregoing is true and correct.

DATED:  Honolulu, Hawaii, _____ OCT - 9 2003

JONATHAN H. STEINER

65439_1.DOC

ORIGINAL

GKT

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2003 JUN -9 PM 1:42

N. Onaga

N. ONAGA
CLERK

OF COUNSEL:
DAVIS LEVIN LIVINGSTON GRANDE

THOMAS R. GRANDE        3954-0
400 Davis Levin Livingston Grande Place
851 Fort Street
Honolulu, Hawai'i  96813
Telephone: (808) 524-7500
Facsimile: (808) 545-7802

BRONSTER CRABTREE & HOSHIBATA

JEFFREY P. CRABTREE     3405-0
ROBERT M. HATCH         7724-0
Pauahi Tower
1001 Bishop Street, Suite 2300
Honolulu, Hawai'i  96813
Telephone: (808) 524-5644
Facsimile: (808) 599-1881

Attorneys for Plaintiff

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| LEE MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY; JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10 AND DOE GOVERNMENTAL ENTITIES 1-10,<br><br>Defendants. | CIVIL NO. 0 3 - 1 - 1 1 9 9 - 0 6<br>(Class Action)<br><br>COMPLAINT; DEMAND FOR JURY TRIAL; AND SUMMONS TO ANSWER CIVIL COMPLAINT |



RECEIVED $200.00    RECEIVED $200.00    PAID SURCHARGE $25.00

EXHIBIT "G"

## COMPLAINT

Representative Plaintiff LEE MILLER ("Plaintiff" or "Representative Plaintiff" or "Class Representative" or "Ms. Miller") through her attorneys, Davis Levin Livingston Grande and Bronster, Crabtree & Hoshibata, files this Complaint against Defendant above-named ("Liberty Mutual" or "Defendant") and alleges as follows:

## INTRODUCTION

1.      This class action is for declaratory relief and monetary damages on behalf of all homeowners in the State of Hawai`i who were insured by Liberty Mutual Fire Insurance Company and who had the Inflation Protection Endorsement (FMHO-679) for their home.  Liberty Mutual Insurance issued similar policies of insurance to all putative class members who had additional coverage under the Inflation Protection Endorsement through standardized pre-printed form disclosures.

2.      The Inflation Protection Endorsement used by Liberty Mutual to insure homeowners in the state of Hawai`i contains provisions that increased on an annual basis both the applicable amounts of insurance coverage and the corresponding insurance premium.  The inflation increase was determined on an annual basis by Liberty Mutual and was applied to increase each succeeding year's limits of coverage and premiums.

3.      Liberty Mutual's use of an Inflation Protection Endorsement for each year it insured a home resulted in its sale to Representative Plaintiff and all potential class members of more insurance than was necessary to cover the replacement value of their home.  The Hawai`i Insurance Code prohibits Liberty Mutual's sale of "overinsurance" to Representative Plaintiff and class members .

2

4.    In this case, Representative Plaintiff, on her own behalf and on behalf of all homeowners in the state of Hawai'i seeks a return of excessive charges for overinsurance imposed by Liberty Mutual in violation of Hawai'i law.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction to hear the claims in this Complaint pursuant to H.R.S. § 603-21.5.

6.    This Court has personal jurisdiction over Defendant pursuant to H.R.S. § 634-35. Among other things, Defendant, in person and/or through agents, has transacted business and committed unfair and deceptive trade practices within the State of Hawai'i, has made and performed contracts substantially connected with the State of Hawai'i and has contracted to insure persons and risks in the State of Hawai'i.

7.    Venue is appropriate in this Circuit pursuant to H.R.S. § 603-36.

## PARTIES

### PLAINTIFF

8.    At all times relevant, Representative Plaintiff Lee Miller was and is a resident of the City and County of Honolulu, State of Hawaii.

### DEFENDANT

9.    Defendant Liberty Fire Insurance Company is a Massachusetts corporation doing business in the state of Hawai'i as "Liberty Mutual Fire Insurance." At all times relevant, Liberty Mutual has been authorized by the State of Hawai'i Insurance Commissioner to engage in the sale of property damage insurance to homeowners in the state of Hawai'i.

10.    Defendant Liberty Mutual issues the Libertyguard Deluxe Homeowners Policy sold to Representative Plaintiff and Class Members, including the Inflation Protection Endorsement (FMHO-679) and the HomeProtector Plus Endorsement (FMHO-693).

11.    Defendants John Does 1-10, Jane Does 1-10, Doe Corporations 1-10, Doe Partnerships 1-10, and Doe Governmental Entities 1-10 are sued herein under fictitious names for the reason that, despite diligent and good faith efforts to obtain information, their true names and identities are presently unknown to Representative Plaintiff, except that they were connected in some manner with the named Defendant or one or more of them and/or are employees, employers, agents, representatives, co-venturers, Liberty Mutual, vendors, suppliers, manufacturers, subcontractors, contractors or consultants of the named Defendant; and/or were in some manner presently unknown to Representative Plaintiff, engaging in the activities alleged herein; and /or were in some manner responsible for the injuries or damages to Representative Plaintiff; and that their true names, identities, capacities, activities and/or responsibilities are presently unknown to Representative Plaintiff and her attorneys.  Representative Plaintiff asks leave of this Court to identify the Doe Defendants if and when their identities are ascertained.

## HAWAI'I LAW PROHIBITS THE SALE OF EXCESSIVE INSURANCE

12.    Hawai'i Revised Statute §431:10E-102 prohibits the following:

(c) No person shall knowingly issue, place, procure, or accept any insurance contract which would result in over-insurance of the property or interest therein proposed to be insured, except as is provided in section 431:10E-103.

13.    The statute states that over-insurance exists if "property or an insurable interest in the property is insured by one or more insurance contracts against the same hazard in *any amount in excess of the actual cash value of the property* or of such

4

interest, as determined as of the effective date of the insurance or of any renewal thereof." HRS §431:10E-102 (a)(emphasis added).

## COMMON FACTUAL ALLEGATIONS

14.     Lee Miller's home was insured by Liberty Mutual from 1988 to the present.  Liberty Mutual issued Ms. Miller its Libertyguard Deluxe Homeowners Policy. In addition to the Homeowners Policy, Ms. Miller purchased a HomeProtector Plus Endorsement (FMHO 693), for which she pays an additional $40-50.  The HomeProtector Plus Endorsement included an Inflation Protection Endorsement (FMHO-679).

15.     The original valuation for the replacement value of the property was $70,000.  While the factual basis of the original appraisal is unclear, Liberty Mutual annually increased its valuation of the subject property, as well as the accompanying insurance premium, Ms. Miller and for all homeowners who had the Inflation Protection Endorsement.

16.     Because the Inflation Endorsements are applied automatically each year, by 2003, Ms. Miller's home had liability limits of $278,700.  Thus, Ms. Miller was paying insurance premiums for $278,700 worth of coverage.  However, the actual replacement cost of her property was only $162,000, which is the total amount Plaintiff would have recovered if her home was destroyed.  Plaintiff's home was overinsured by more than $100,000, or more than 40% of her replacement value.

17.     Because of the Inflation Protection Endorsement, Plaintiff paid hundreds of dollars in excess premiums.

18.     In January of 2003, Plaintiff contacted a Liberty Mutual Representative, Christine Barut, regarding comparatively high insurance premiums paid on her house, relative to others in her neighborhood. Although there were no changes to the physical description of the property to justify unusual increases in coverage, Plaintiff observed a significant increase in the valuation of her house compared to the houses in her neighborhood.

19.     As a result of this discrepancy, representatives of Liberty Mutual and Ms. Miller exchanged a number of correspondences. On January 7, 2003, a Liberty Mutual Representative sent Ms. Miller a new policy with the adjusted coverage amounts for the policy year 2003-2004. The policy was accompanied by a refund starting at the beginning of the new policy period commencing February 11, 2003, that went directly to Ms. Miller.

20.     In February of 2003, Ms. Miller requested that Liberty Mutual refund the excess premium amounts paid by her household to Liberty Mutual for the previous two years. At that time the representative claimed that the amount could not be refunded and justified that decision stating that a policyholder is given the coverages for review. According to Liberty Mutual, because the premium was paid, it was therefore deemed accepted. However, On March 11, 2003, Ms. Miller received a check for $1,070 without formal explanation. When asked why she was receiving the check, she was told verbally that she was refunded due to a reduction of Plaintiff's dwelling coverage for the past 2 years.

21.     Plaintiff filed a formal complaint with the Hawai'i Insurance Bureau. In response to inquiries by Steve Bumanglag, a Bureau Investigator, Neal J.

Bell, a Liberty Mutual Portfolio Underwriter for the Pacific Region, claimed that it is Liberty Mutual's normal procedure to discuss all increases with the policyholder prior to increasing coverage. Ms. Miller, however, had never been contacted by a Liberty Mutual representative to discuss any increases in coverage prior to adjusted coverage limits.

22.    Mr. Bell also explained the manner in which Liberty Mutual determined premium prices for renewed policies. He stated, "The evaluator used at Liberty Mutual was a tool which determined the replacement cost of a home and hence, the amount for which the policyholder should be insured. A paper evaluator was subsequently replaced by an electronic evaluator…Evaluators are used for new business policies and for questions about the coverage amount. *Renewing policies, endorsed with the inflation protection endorsement, are increased annually* by the Residential Building Cost Information System Index of Marshall and Swift." (emphasis added)

23.    It was Liberty Mutual's policy to systematically apply this inflation factor annually when calculating policy limits and premiums on each policy supplemented with the Inflation Protection Endorsement irrespective of the actual replacement value of a home. Further, it was Liberty Mutual's policy to systematically include in its insurance policies clauses that authorized an automatic annual increase in policy limits and thereby an automatic increase in premiums paid by homeowners.

## CLASS ACTION ALLEGATIONS

24.    Representative Plaintiff brings this case as a class action under Hawaii Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on behalf of herself and as the representative of a class ("the Class") as follows:

25.    All homeowners who were or are insured by Liberty Mutual Insurance using a standardized form document entitled "LibertyGuard Deluxe Homeowners Policy" and who had either the HomeProtector Plus Endorsement (FMHO 693) or the Inflation Protection Endorsement (FMHO-679).

26.    Excluded from the Class are: (a) the Defendant; (b) Defendant's subsidiaries, parents, and affiliates, including all directors, officers, and employees thereof; (c) members of the immediate family of any of the foregoing, if natural persons; (d) the legal representatives, heirs, successors, and assigns of any of the foregoing and (e) any person in which any of the foregoing has a controlling interest.

27.    Class requirements under Rule 23(a) are met in that:

a.    The Class is so numerous that joinder of all members is impracticable. On information and belief, Liberty Mutual has issued hundreds of policies of insurance substantially similar to the policy of insurance issued to Representative Plaintiff. Liberty Mutual is in possession of a complete list of all consumers to whom it sold insurance in the State of Hawaii.

b.    There are questions of law and fact common to the Class, i.e., all Class Members have been sold similar insurance policies through a pre-printed standardized form policy and all Class Members have suffered similar damages from the purchase of insurance policies.

c.    The questions of law relating to liability that are common to the Class are the duty of Liberty Mutual not to engage in the practice of overinsuring its insureds pursuant to similar written form documents given to each Class Member.

d.      The questions of fact relating to liability that are common to the Class are Liberty Mutual's breach of its statutory and common law duty not to overinsure its insureds.

e.      The questions of fact relating to damages that are common to the Class are monetary damages each has suffered, i.e., the return of premium payments made for overinsurance.

f.      The claims of the Representative Plaintiff are typical of the claims of the Class because the Representative Plaintiff and all the Class Members were damaged by the same wrongful conduct committed by Liberty Mutual as alleged herein. The Representative Plaintiff and the Class Members have had homeowners policies sold to them by Liberty Mutual.

g.      The Representative Plaintiff will fairly and adequately represent the interests of the Class. The interests of the Representative Plaintiff are coincident with, and not antagonistic to, those of the Class. In addition, the Representative Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action cases.

28.     Class Requirements under Rule 23(b)(2) are met in that Defendant Liberty Mutual has acted on grounds generally applicable to the class through sale of excessive insurance to its policyholders, thereby making appropriate declaratory relief with respect to the class as a whole.

29.     Class Requirements under Rule 23(b)(3) are met in that:

a.      The following questions of law and fact common to the members of the class are important and predominate over any questions affecting only

9

individual members because Liberty Mutual has acted on grounds generally applicable to the Class:

      (i)     Liberty Mutual has issued homeowners insurance policies to all Class Members;

      (ii)    The legal obligations of Liberty Mutual not to sell excessive insurance to its policy holders;

      (iii)   The conduct of Liberty Mutual in selling excessive insurance to its policy holders;

      (iv)   Whether Liberty Mutual is liable to Class Members for the sale of excessive insurance to its policy holders;

      (v)    Whether Liberty Mutual is liable to Class Members for unfair and deceptive trade practices in violation of HRS Chapter 480;

      (vi)   Whether Liberty Mutual acted knowingly, recklessly or in a willful and wanton manner and/or in reckless disregard to the rights of Class Members, and

      (vii)  Damages to the members of the Class.

    b.    Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender. There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient

adjudication of the controversy. Separate cases could produce varying adjudications with respect to individual members, resulting in conflicting and incompatible standards of conduct.

### FIRST COUNT – VIOLATION OF HRS Section 431:10E-102

30.   Representative Plaintiff incorporates by reference and realleges the above allegations.

31.   The conduct and/or omissions of Liberty Mutual violate HRS section 431:10E-102, which prohibits the sale of excessive property insurance in the state of Hawaii.

### SECOND COUNT – VIOLATION OF HRS  CHAPTER 480

32.   The Representative Plaintiff incorporates by reference and realleges the allegations contained above.

33.   The conduct and/or omissions of Liberty Mutual constitute unfair and/or deceptive trade practices as described in H.R.S. Chapter 480, thereby legally causing damages to the Representative Plaintiff and the Class Members.

### THIRD COUNT – DECLARATORY RELIEF

34.   Representative Plaintiff incorporates by reference and realleges the above allegations.

35.   By reason of the foregoing, Representative Plaintiff and Class Members seek a declaration declaring that 1) Liberty Mutual's conduct violated HRS section 431:10E-102 and 2) Representative Plaintiff and Class Members are entitled to refunds of all premiums, and other costs and charges paid with respect to property insurance they were sold by Liberty Mutual.

## FOURTH COUNT – UNJUST ENRICHMENT

36.    Representative Plaintiff incorporates by reference and realleges the above allegations.

37.    By reason of the foregoing, Defendant has been unjustly enriched at the expense of and to the detriment of Class Members and Defendant should return to Class Members all amounts by which they have been unjustly enriched.

## FIFTH COUNT – RESTITUTION

38.    Representative Plaintiff incorporates by reference and realleges the above allegations.

39.    By reason of the foregoing, Defendant has been unjustly enriched at the expense of and to the detriment of Class Members and Defendant should give restitution to Class Members all amounts that they have improperly charged.

## FOURTH COUNT – DISGORGEMENT

40.    Representative Plaintiff incorporates by reference and realleges the above allegations.

41.    By reason of the foregoing, Defendant has been unjustly enriched at the expense of and to the detriment of Class Members and Defendant should disgorge to Class Members all amounts by which they have improperly charged.

## FIFTH COUNT – PUNITIVE DAMAGES

42.    Representative Plaintiff incorporates by reference and realleges the allegations contained in above.

43.    Liberty Mutual's conduct was knowingly, recklessly or in a willful and wanton manner and/or in reckless disregard to the rights of Class Members.

Wherefore, Plaintiff, for herself and the other members of the class, request and demand judgment against Defendant, jointly and severally as follows:

1.    To declare and define the class as requested and give notice to all potential class members in a form and manner to be determined by the Court upon the Representative Plaintiff motion to certify the class;

2.    For declaratory and equitable relief as the Court deems just under the premises, including application of the remedies of unjust enrichment and/or disgorgement as appropriate;

3.    For special and general damages as the evidence may warrant at trial;

4.    For consequential damages as the evidence may warrant at trial;

5.    For treble and/or punitive damages as the evidence may warrant at trial;

6.    For prejudgment and post judgment interest;

7.    For her reasonable costs and attorneys' fees; and/or

8.    For such other and further relief that this Court deems appropriate.

Dated:  Honolulu, Hawaii, June 9, 2003.

THOMAS R. GRANDE
Attorney for Plaintiff

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| LEE MILLER, individually and on behalf of all others similarly situated, | CIVIL NO. _____ (Class Action) |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| vs. | |
| LIBERTY MUTUAL FIRE INSURANCE; JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10 AND DOE GOVERNMENTAL ENTITIES 1-10, | |
| Defendants. | |

## DEMAND FOR JURY TRIAL

Plaintiff above-named, by and through her attorneys, Davis Levin Livingston Grande and Bronster Crabtree and Hoshibata, hereby requests trial by jury in the above-entitled matter.

DATED: Honolulu, Hawaii, June 9, 2003.

_____
THOMAS R. GRANDE
Attorney for Plaintiff

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| LEE MILLER, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE; JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10 AND DOE GOVERNMENTAL ENTITIES 1-10,<br><br>      Defendants. | CIVIL NO. _____<br>(Class Action)<br><br>**SUMMONS TO ANSWER CIVIL COMPLAINT** |

### SUMMONS TO ANSWER CIVIL COMPLAINT

LIBERTY MUTUAL FIRE INSURANCE

To the above-named Defendants:

   You are hereby summoned and required to serve upon Plaintiff's attorneys, whose address is **DAVIS LEVIN LIVINGSTON GRANDE, 851 Fort Street, 4th Floor, Honolulu, Hawai`i 96813-4317,** an answer to the Complaint which is attached. This action must be taken within **twenty (20) days** after service of this summons upon you, exclusive of the day of service. If you fail to make your answer within the twenty (20) day time limit, judgment by default will be taken against you for the relief demanded in the Complaint.

   This summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled court permits, in writing on this summons, personal delivery during those hours.

A failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.

DATED:  Honolulu, Hawai`i     JUN - 9 2003                    .


_____
CLERK OF THE ABOVE-ENTITLED COURT



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASSOCIATION OF APARTMENT OWNERS ) | CIVIL NO. CV03 00312 HG BMK |
| OF THE BOUGAINVILLE, BOARD OF ) | (Class Action) |
| DIRECTORS OF ASSOCIATION OF ) | |
| APARTMENT OWNERS OF THE ) | CERTIFICATE OF WORD COUNT |
| BOUGAINVILLE, individually and ) | |
| on behalf of all others ) | |
| similarly situated, ) | |
| ) | |
|            Plaintiffs, ) | |
| ) | |
|    vs. ) | |
| ) | |
| STATE FARM INSURANCE; JOHN DOES ) | |
| 1-10, JANE DOES 1-10, DOE ) | |
| CORPORATIONS 1-10, DOE ) | |
| PARTNERSHIPS 1-10 AND DOE ) | |
| GOVERNMENTAL ENTITIES 1-10, ) | |
| ) | |
|           Defendants. ) | |
| _____) | |

CERTIFICATE OF WORD COUNT

      I hereby certify, pursuant to Local Rules 7.5 and 56.1(d),

that DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S REPLY

MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO

STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR LACK OF

65439_1.DOC

SUBJECT MATTER JURISDICTION contains 4,492 words.

DATED:  Honolulu, Hawaii,  _____ OCT - 9 2003 _____

_____
WILLIAM C. McCORRISTON
JONATHAN H. STEINER
BECKY T. CHESTNUT

Attorneys for Defendant
STATE FARM FIRE AND CASUALTY
COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASSOCIATION OF APARTMENT OWNERS ) <br> OF THE BOUGAINVILLE, BOARD OF ) <br> DIRECTORS OF ASSOCIATION OF ) <br> APARTMENT OWNERS OF THE ) <br> BOUGAINVILLE, individually and ) <br> on behalf of all others ) <br> similarly situated, ) <br> ) <br>         Plaintiffs, ) <br> ) <br>   vs. ) <br> ) <br> STATE FARM INSURANCE; JOHN DOES ) <br> 1-10, JANE DOES 1-10, DOE ) <br> CORPORATIONS 1-10, DOE ) <br> PARTNERSHIPS 1-10 AND DOE ) <br> GOVERNMENTAL ENTITIES 1-10, ) <br> ) <br>         Defendants. ) <br> _____) | CIVIL NO. CV03 00312 HG BMK <br> (Class Action) <br> <br> CERTIFICATE OF SERVICE |

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on this date a true and correct copy of the foregoing document was served on the following parties at their respective addresses by means of U. S. mail, postage prepaid (M) or by hand delivery (HD):

      THOMAS R. GRANDE, ESQ.       (HD)
      400 Davis Levin Livingston
        Grande Place
      851 Fort Street
      Honolulu, Hawaii  96813

          and

JEFFREY P. CRABTREE, ESQ.          (HD)
ROBERT M. HATCH, ESQ.
Pauahi Tower
1001 Bishop Street, Suite 2300
Honolulu, Hawaii 96813

Attorneys for Plaintiffs

DATED: Honolulu, Hawaii, _____ OCT - 9 2003 _____

WILLIAM C. McCORRISTON
JONATHAN H. STEINER
BECKY T. CHESTNUT

Attorneys for Defendant
STATE FARM FIRE AND CASUALTY
COMPANY

2